260 SUPREME COURT OF INDIANA,

The State, ex rel. Martin et al., v. Porter, Governor, et al.

---

No. 10,805.

The State, ex rel. Martin et al., v. Porter, Governor, et al.

CONSTITUTIONAL LAW.—*Appropriation of Money.*—*Auditor of State.*—*Treasurer of State.*—Under section 3 of article 10 of the State Constitution of 1851 (sec. 195, R. S. 1881), no money can be drawn from the State treasury except in pursuance of appropriations made by *law;* and, under section 5639, R. S. 1881, the Auditor of State is prohibited from drawing a warrant, and in section 5638, R. S. 1881, the Treasurer of State is expressly prohibited from paying a warrant, unless there be money actually in the treasury specifically appropriated by *law* to the purpose for which such warrant is drawn.

The State, *ex rel.* Martin *et al.*, *v.* Porter, Governor, *et al.*

MANDATE.—*Justice of Claim.*—The justice of the relator's claim, which is apparent and unquestioned, does not authorize the courts to require by mandate the Auditor of State to issue his warrant, or the Treasurer of State to pay such warrant, for the amount of such claim, where no money is set apart for such purpose by an appropriation made by *law.*

SAME.—*Appropriation for Future Purposes.*—*Antecedent Debt.*—The act of February 23d, 1883, making specific appropriations for the completion and furnishing of the department for women of the Indiana Hospital for the Insane, and for the construction of a warehouse and two coal-houses for such institution (Acts 1883, p. 25), makes appropriations for future purposes, and the moneys thereby appropriated can not be diverted from such future purposes and applied to the payment of an antecedent debt of such institution.

From the Superior Court of Marion County.

*E. B. Martindale, C. Martindale, J. E. McDonald* and *J. M. Butler,* for appellants.

*F. T. Hord,* Attorney General, for appellees.

HOWK, J.—We take from the brief of the appellant's counsel in this cause the following summary of the relators' verified complaint:

By an act of the General Assembly, approved March 11th, 1875, the "Commissioners for the Indiana Hospital for the Insane, provisional board," were empowered "to locate, construct, furnish, equip and open for the reception of insane persons, buildings" to be "known and designated as the Indiana Hospital for the Insane, department for women," and to contract for the necessary work and to pay for the same "by warrants directed to the Auditor of State," bearing "the signature of the president and secretary of the board, and countersigned by the supervisor of construction;" that in pursuance of the provisions of said act the said provisional board, on the 4th day of June, 1875, entered into a contract with the relator, John Martin, whereby Martin agreed to perform all the labor and furnish all the material in the construction of the brick work of said building, for the sum of $9 per thousand, "mason's measurement"; that Martin gave bond in the sum of $400,000 for the faithful performance of his part of the contract; that he performed his part of the contract

faithfully and well, and his work was approved, accepted and commended by the supervisor of construction and said board; that he was paid for his work from month to month on approximate estimates made by the architect, and that on the 2d day of November, 1881, said board, having measured said brick work in full, found that there was a balance due said Martin of $46,736.46, and issued to him their warrant for said amount, directed to the Auditor of State, signed by the president and secretary, and countersigned by the supervisor of construction, in manner and form according to the statute defining the powers and duties of the board, a copy of which warrant is set out in the complaint; that there yet remains about $2,700 worth of work to be done under said contract in the completion of the building; that at the time of the issuance of said warrant payment of the same was demanded of the auditor, who refused to pay the same, for the reason that there was no money in the fund for the erection and construction of said building; that Martin, being indebted to the Bank of Commerce in the sum of $22,000, assigned said warrant to said bank as collateral security for the payment of said indebtedness; that by an act approved February 23d, 1883, the General Assembly appropriated to the fund for the construction of said building the sum of $42,000; that on the 6th day of March, 1883, the relators demanded of the Auditor of State a warrant upon the Treasurer of State for the amount of money then in said fund, in partial payment of their warrant from the provisional board, which he refused to give them; whereupon they filed their complaint and prayed a mandate against the Auditor of State, commanding him to draw his warrant in favor of the relators for the amount of money in the fund for the construction of the said building, and a mandate against the Treasurer of State, commanding him to pay said warrant of the Auditor of State, when so issued, and asking a restraining order and temporary injunction until the rights of the relators could be heard and determined.

Upon the relators' verified complaint an alternative writ of mandate was issued, directed to the appellees, to which they appeared; and their motions to quash the writ and their demurrers thereto having been overruled by the court, they severally made return, by answers in several paragraphs, to such alternative writ. The demurrers of the relators, for the alleged want of facts, to the second, third, fourth, fifth, sixth, eighth and ninth paragraphs of the separate answer and return of the Auditor of State, and to the second, third and fourth paragraphs of the separate answer and return of the Treasurer of State, and to the separate answer and return of the "provisional board," were severally overruled to the separate paragraphs of such answers and returns, and were carried back and sustained by the court to the verified complaint and alternative writ. The relators duly excepted to each of these rulings, and declined to amend or plead further; and thereupon judgment was rendered by the court, at special term, that they take nothing by their suit herein, and that the appellees recover their costs. On appeal to the general term the judgment at special term was affirmed; and from the judgment of affirmance the appellant's relators now prosecute this appeal to this court.

In the general term of the court below, the appellant's relators assigned as errors the several rulings of the court, at special term, on their demurrers to the several paragraphs of the separate answers and returns of the appellees; and these errors they have brought before this court, by a proper assignment of error.

The appellant's relators were and are the holders of a certificate, of which the following is a copy:

"No. 985.          INDIANAPOLIS, Ind., Nov. 2d, 1881.

"The State of Indiana, on account of the Hospital for the Insane, department for women.

"To the Auditor of State:

"This is to certify, that by an order of the commissioners for the Indiana Hospital for the Insane, provisional board,

this day made, it is found that there is due John Martin from the State of Indiana, for material furnished and work performed to this date, under his contract with said board dated June 4th, 1875, the sum of forty-six thousand, seven hundred and thirty-six dollars and forty-six cents (46,736.46).

"The Auditor of State is therefore authorized to issue to John Martin, his executors, administrators or assigns, a warrant on the Treasurer of State for said sum of $46,736.46, whenever an appropriation shall be made by the General Assembly of the State of Indiana, for the purpose of paying the same. This warrant being issued by order of said provisional board, in pursuance of section 13 of the act of the General Assembly of the State of Indiana, approved March 11th, 1875. In witness whereof," etc.

This certificate or warrant was duly signed, attested and certified by the proper officers of the provisional board and the superintendent of construction.

It was not alleged in the relators' verified complaint or in the alternative writ of mandate, that an appropriation had been made by the General Assembly of this State, for the specific purpose of paying the certificate or warrant, issued by the provisional board to the relator John Martin. On the other hand, the substance of the appellees' defence to the relators' suit was that the General Assembly had never made an appropriation for the purpose of paying such certificate or warrant. The third paragraph of the answer or return of the Auditor of State was, in substance, as follows:

*Third.* That no money can be paid out of the State Treasury except upon appropriation duly and lawfully made by the General Assembly of the State of Indiana; that defendant, as the Auditor of said State, could not lawfully draw his warrant upon the State Treasury for the payment of relators' claim, or any part thereof, unless an appropriation had been specifically made for the payment of the same by the General Assembly, and the defendant avers that the said provisional board allowed the said claim of relators upon a compromise

with said Martin, and on the express condition that the same was not to be paid until the General Assembly of the State of Indiana made a specific appropriation for the payment thereof, and said allowance and said condition were duly and properly spread upon the records of the said provisional board; and, thereafter, said relator John Martin, while the sole owner of said claim, accepted and received said allowance upon said terms and conditions, as prescribed by said board, and defendant avers that the General Assembly of the State of Indiana had not, at the time of the demand by the relators, on defendant, to issue a warrant for said indebtedness to them, nor prior thereto or since, made any appropriation, by law or otherwise, for the payment of said indebtedness, or any part thereof. Defendant charges and avers that there was not, at the time of said demand, and there is not now, any fund in the State Treasury upon which the defendant was or is authorized to draw his warrant for the payment of the said debt of relators, or any part thereof; that after examination of said claim defendant refused to draw said warrant, in good faith, honestly, and without malice toward relators, or either of them, but in the just and honest performance and exercise of his official duties, and defendant demands judgment.

At the last session of the General Assembly of this State, an act was passed and duly approved on the 23d day of February, 1883. This act is entitled and reads as follows:

"An Act making appropriations for the completion of the construction and furnishing of the department for women of the Indiana Hospital for the Insane, and for the construction of a warehouse and two coalhouses for said institution, and declaring an emergency.

[APPROVED FEBRUARY 23, 1883.]

"WHEREAS, The number of insane persons who have a constitutional right to be cared for by the State is largely in excess of the present capacity of the hospital for the insane; and,

"WHEREAS, The completion of the department for women of said hospital will secure an increase of capacity for more than two hundred more inmates; and,

"WHEREAS, The hospital has no provision for the convenient, safe, and economical storage of subsistence, supplies and coal, and thereby suffers waste and spoilage of its property, and exposure and damage to its employees and inmates; therefore,

"SECTION 1. *Be it enacted by the General Assembly of the State of Indiana,* That for the following purposes the following sums of money are hereby now appropriated from the general fund of the State Treasury, to wit:

"1. For the completion of the construction of the department for women of the Indiana Hospital for the Insane, forty-two thousand dollars.

"2. For the completion of the furnishing of said department, ten thousand dollars.

"3. For the construction of a warehouse for said hospital, five thousand dollars.

"4. For the construction of a coal-house for each of the two departments of said hospital, two thousand and five hundred dollars.

"SEC. 2. That of these several sums appropriated, that for the completion of the construction of the department for women shall be solely subject to the control of the commissioners of the Indiana Hospital for the Insane, department for women, provisional board, subject to existing laws defining the powers and duties of said board.

"SEC. 3. That all other sums by this act appropriated shall be used only by the trustees of the Indiana Hospital for the Insane, and only for the purposes set forth, subject to the laws defining the powers and duties of said trustees.

"SEC. 4. That there being an emergent need for the immediate operation of this act, the same shall be in force from and after its passage."

In their verified complaint, and in the alternative writ, the appellant's relators claimed that the moneys appropriated in and by this act were applicable to the payment of the certificate or warrant issued as aforesaid by the provisional board

to the relator Martin; and the object of their suits seems to be to compel the appellees by mandate to divert the moneys appropriated from the purposes expressed in the act, and to apply such moneys in payment of their certificate or warrant. It seems to us that the controlling question in this case may be thus stated: Have the relators any valid claim to the moneys appropriated in the above quoted act, or can such moneys be lawfully applied to any other purpose than those expressed in the act? Other questions have been presented and ably discussed by the learned counsel of the respective parties; but if the question stated must be answered, as we think it must, in the negative, such answer will be decisive of the case at bar against the appellant's relators.

In section 3, of article 10, of the Constitution of this State of 1851, it is expressly declared as follows: "No money shall be drawn from the treasury but in pursuance of appropriations made by law." R. S. 1881, section 195. In section 5639, R. S. 1881, in force since August 6th, 1859, it is provided as follows: "The Auditor of State shall, at no time, draw a warrant upon the Treasurer of State unless there be money in the Treasury belonging to the fund upon which the same is drawn to pay the same, and in conformity to appropriations made by law, and on money actually in the Treasury, subject to the payment of the same." In the preceding section 5638, R. S. 1881, "The Treasurer of State is expressly prohibited from paying any money out of, or transferring any money from, the Treasury of State, except upon the warrant of the Auditor of State." In *State, ex rel.*, v. *Ristine, Auditor*, 20 Ind. 345, after quoting these statutory provisions, the court said: "It is evident that the provisions, thus quoted, contemplated two things: 1. To carry into full effect the section of the Constitution above quoted; and 2. To create, or at least maintain a strict system of checks upon each other in the Auditor's and Treasurer's offices, in regard to the moneys of the people entrusted to the care of said officers."

In their brief of this case the relators' counsel say: "Three

The State, *ex rel.* Martin *et al., v.* Porter, Governor, *et al.*

questions arise upon the complaint and determine its sufficiency, viz.:

"*First.* Have the relators a valid, liquidated indebtedness?

"*Second.* Is their warrant payable only by a specific appropriation, made therefor by the General Assembly?

"*Third.* Is the appropriation, made by the act of February 23d, 1883, applicable to its payment?"

With reference to the first of these questions, it will suffice to say that the appellees have not, in any manner, called in question the validity of the warrant issued by the provisional board to the relator John Martin. It may be assumed, therefore, in this case, that such warrant evidenced "a valid, liquidated indebtedness," in favor of the relators.

2. We are of opinion, however, that the relators' warrant, like all similar claims against the State, is payable only by or out of a specific appropriation, made for that purpose by the General Assembly. It was alleged by the relators, in their verified complaint and in the alternative writ, and it is conceded by their counsel in argument, "that, at the time such warrant was issued, the appropriations had been exhausted, and there was no money in the Treasury for the payment of the warrant." Since the issue of such warrant, on the 2d day of November, 1881, there has only been one session of the General Assembly of this State, to wit, the regular session, 1883. At this last session only one act was passed and became a law, making appropriations for the benefit or use of the existing Indiana Hospital for the Insane, and that is the act heretofore set out in this opinion. Relators' counsel conclude their argument, on their second question above quoted, with this statement: "We think the conclusion is irresistible that this warrant is not limited to payment by a *specific* appropriation by the General Assembly, but is payable out of any money *generally* appropriated for the construction of the building." There is, perhaps, a slight confusion of terms in this language of counsel. If the General As-

sembly had made an appropriation "for the construction of the building" of the Indiana Hospital for the Insane, it would certainly have been a *specific* appropriation to that end, and if the relators' warrant would have been payable out of the money so appropriated, it would certainly have been payable out of such *specific* appropriation. But, however this may be, it is absolutely certain, we think, that, since the issue of the relators' warrant by the provisional board, there has not been, and is not now, "any money *generally* appropriated for the construction of the building" of the Indiana Hospital for the Insane, out of which such warrant is payable, or can be lawfully paid.

3. We come now to the consideration of the *third* question above quoted, as stated by the relators' counsel, namely: "Is the appropriation made by the act of February 23d, 1883, applicable to the payment" of the relators' warrant? We are of opinion that this question must be answered in the negative. In clear, plain and unambiguous language, the act makes four certain and specific appropriations, for four well defined and clearly expressed purposes; and the payment of the relators' warrant, or of any prior or outstanding indebtedness, does not come within any of such purposes. In the preamble of the act the reasons are plainly expressed for making each of such appropriations; and the payment of the relators' warrant, or of any other antecedent debt, is not one of such reasons. The appropriations were manifestly made for future purposes, and not for past transactions. The intention and purpose of the General Assembly in making the several appropriations are clearly shown in the title, the preamble and the body of the act. The language used is so plain in its meaning, as it seems to us, that judicial construction or interpretation is wholly unnecessary. There are no technical words or phrases in the act under consideration; and, giving the words used "their plain, or ordinary and usual sense," as required by the first rule for the construction of statutes (R.

S. 1881, sec. 240), we can not hold that "the appropriation made by the act of February 23d, 1883, is applicable to the payment of the relators' warrant."

Our conclusion is, therefore, that the facts stated by the relators, in their verified complaint and in the alternative writ, were not sufficient to constitute a cause of action, or to entitle them to any relief as against the appellees. The relators' demurrers for the want of facts to the several paragraphs of the separate answers of the appellees were properly carried back and sustained by the court to the complaint and alternative writ. In such a case it is immaterial whether the paragraphs of answer were good or bad, because a bad answer is a good enough answer to a bad complaint. *Ætna Ins. Co.* v. *Baker,* 71 Ind. 102.

We have found no error in the record of this cause which would authorize or require the reversal of the judgment.

The judgment is affirmed, at the costs of the appellant's relators.