Filed April 26, 1884.

## No. 11,260.

### RICE, AUDITOR OF STATE, *v.* THE STATE, EX REL. DRAPIER.

AUDITOR OF STATE.—*Duty to Draw Warrants.*—*Mandate.*—When the amount of a claim against the State has been ascertained as prescribed by law, and money in the treasury has been appropriated to pay it, the auditor of State may be compelled by mandate to draw a warrant therefor, but not otherwise.

Rice, Auditor of State, *v.* State, *ex rel.* Drapier.

SAME.—*Legislative Appropriation.*—*Brevier Reports.*—The act of January 9th, 1883, making an appropriation to pay the expenses of the 53d General Assembly, did not appropriate any money to the payment of expenses of any former General Assembly, nor could payment for Brevier Reports of proceedings and debates of that General Assembly be made out of said appropriation, in the absence of a definite allowance therefor made by the concurrent action of the two houses, which was not done.

SAME.—*Legislative Power.*—*Separate and Concurrent Resolutions of Each Branch of General Assembly.*—Separate resolutions of each house, authorizing payment for Brevier Reports, could not amend or vary the provisions of the statute, which required concurrent action of the two houses.

From the Marion Circuit Court.

*F. T. Hord*, Attorney General, for appellant.

*O. M. Wilson*, for appellee.

NIBLACK, J.—Complaint by William H. Drapier as relator, styling himself plaintiff, against James H. Rice, auditor of State, for a mandate, in two paragraphs.

The first paragraph charged that on the 9th day of January, A. D. 1883, the General Assembly of the State of Indiana appropriated for legislative expenses the sum of $125,000, by an act entitled "An act appropriating $125,000 to defray the expenses of the regular session of the Fifty-Third General Assembly of the State of Indiana, and other matters connected therewith, and declaring an emergency," approved January 9th, 1883 ; that at the beginning of said session, by reason of said appropriation to the respective houses thereof, the House of Representatives and Senate of said Assembly, and agreeably to the usage and practice heretofore observed by preceding Assemblies of said State, and of the orders and allowances heretofore made by the respective houses in that behalf, and for the better preservation of, and to secure greater accuracy in, the reports of debates, votes and proceedings thereof, it became and was necessary to employ some suitable, competent and skilled person to faithfully and accurately report said proceedings, and reduce the same to writing in proper form for the use of said Senate and House, and the information and benefit of the citizens of the State ; that in obedience

to this usage and practice plaintiff was authorized, employed and permitted by said Senate, as well as said House, the privileges of the floors thereof, whereby he should so report said debates, votes and proceedings thereof, and reduce the same to writing; that in and during the whole time of said session of said Assembly, plaintiff was so recognized by said Senate and House as the stenographic Assembly reporter, and as such, by their sanction and direction, did make, prepare and publish, and did cause to be made, prepared and published, for the Senate and House, and such use as they might see proper to make thereof, said debates, votes, reports and proceedings thereof, and did print, publish and bind the same in the ascertained form and style of the "Brevier Legislative Reports," of the Fifty-Third General Assembly of the State of Indiana, being volume twenty-one; that in pursuance of said employment said services became and were a legislative expense, and in consideration of said services so rendered, and to obtain and secure copies of said reports of their proceedings, the Senate did, on the 5th day of March, A. D. 1883, being a legislative day, allow and direct to be paid to said plaintiff the sum of two-thirds of a cent per page per copy for said Brevier Legislative Reports, so made and published by plaintiff, of said proceedings, votes and debates, and for payment therefor at the same time passed a resolution, in the words and figures following:

"*Resolved,* That the auditor of state be and is hereby directed to issue his warrant on the State treasury, at the end of the present session, in favor of W. H. Drapier, stenographic Assembly reporter, for what may be due him for the Brevier Legislative Reports, at the same price paid per page per copy as uniformly paid since 1857, to be paid out of the funds appropriated for legislative expenses; the number of copies for the current session to be the same as heretofore published, ten copies of each to be forwarded, as soon as published, to each member of the General Assembly."

That on the same day, by reason of said action of the Sen-

ate granting unto plaintiff, as the stenographic Assembly reporter, an order for the payment of said reports, and because of said reports being made and published, and containing likewise the debates, votes, reports and proceedings of the House of Representatives during and for said session, and to procure the same upon their own order, the said House accepted said official reports, and passed the following order in relation thereto :

"BY MR. MOSIER—*Mr. Speaker :* I move that the secretary of State is hereby directed to send to each member of this House, officers and clerks thereof, five copies of the Brevier Reports, and each of the House and Senate Journals, as soon as they are printed and bound, and the Acts of the present session, and the motion was adopted by the House."

That the plaintiff caused said Brevier Legislative Reports to be printed and bound, and to be accordingly deposited with the secretary of state for distribution, as more particularly is shown by the certificate hereto attached, and made part hereof; that, by reason of the premises, the State of Indiana, by her Legislature, became and is indebted to plaintiff in the sum of $3,797.26, for said Brevier Legislative Reports so taken, made and published by plaintiff, at and during the regular session of said Fifty-Third General Assembly of the State of Indiana, as more fully appears by said account filed herewith and also made part hereof.

Whereby and by means whereof plaintiff became and was entitled to receive from the State of Indiana the sum of $3,797.26, for the payment of which there is money in the State treasury belonging to the fund upon which said order is made, and upon which the defendant should draw his warrant in favor of plaintiff for said amount; that, in obedience to the authority and direction in said resolution contained, it became and was the duty of defendant, auditor of state, upon the presentation thereof, together with the verified account of plaintiff for the amount then and there shown to be due him for said reports of the regular session of the Fifty-Third General Assembly of the State of Indiana, to draw his war-

rant in favor of plaintiff on said fund on the treasurer of state for the amount so then and there found to be due him, which said auditor of state was so requested to do ; and upon said account, duly acknowledged and verified, said plaintiff did then and there, on the 1st day of August, 1883, demand of the defendant Rice, auditor of state, at the office of the auditor of state in the city of Indianapolis, that he draw his warrant as such auditor of state in favor of the plaintiff on the treasurer of state for the said sum of $3,797.26, due and owing and payable to him out of the State treasury by said act, approved January 9th, 1883 ; that said Rice, as such auditor of state, utterly refused to issue or draw said warrant, and still withholds compliance with said demand although there is money in said treasury especially appropriated to pay the same; that no cause or facts exist to constitute an excuse for said refusal, and plaintiff without this has no other adequate and specific remedy by way of action or distress for the recovery of said money. Wherefore plaintiff prayed that a writ of mandate be issued to said Rice, as such auditor of state, commanding him to draw a warrant upon the treasurer of state in favor of the plaintiff for the sum of $3,797.26.

The account accompanying this paragraph of the complaint was as follows:

" THE STATE OF INDIANA, *Dr.*,

To W. H. DRAPIER, *Stenographic Assembly Reporter:*

For 1,750 copies of the Brevier Legislative Reports of the debates and proceedings of the regular session of the Fifty-Third General Assembly of the State, volume 21, at the price uniformly paid heretofore by the State, two-thirds of a cent per page per copy, 316 pages, in compliance with Senate and House resolutions, both passed March 5th, 1883 . . . . . . . . . . . . . . . . . . . $3,686 66

For interest on above, six months, at six per cent.  110 60

" Total . . . . . . . . . . . . . . . . . . $3,797 26"

The second paragraph of the complaint charged that there was due and owing to the plaintiff by the State, on account of like services herein set forth and rendered in same manner and form, in and for the Fifty-First and Fifty-Second General Assemblies of the State of Indiana, the additional sum of $11,656.23, as more fully appears by the account and full statement thereof hereto attached and made'part hereof; that said services were rendered at the instance and request, and with the full knowledge of the respective houses of said Assemblies—a printed copy of proceedings and index being placed every week and part daily upon the desk of each member thereof by plaintiff. A copy of such printed circular is hereto attached, whereby and by means whereof the debates, votes and proceedings of said Assemblies might be accurately taken and perfected, and were better preserved for the use of said Senate and House and Assemblies; that said Fifty-First and Fifty-Second General Assemblies of the State of Indiana gave to said plaintiff the privileges of the floor in their respective houses thereof for the purpose of reporting the debates and proceedings thereof, and with the sanction and under the direction of each of said houses, to wit: the Senate and House of Representatives. He then and there made and published, and caused to be made and published, volumes seventeen, eighteen, nineteen and twenty of said Brevier Legislative Reports, containing the debates, votes and proceedings thereof as they daily occurred; and in consideration of said services, and to procure copies of reports connecting therewith, the Senate of said Fifty-First General Assembly directed the secretary of state to place the said Brevier Legislative Reports of former Assemblies on the desks of members thereof, as more fully appears by resolution in the words and figures following, to wit:

"*Resolved,* That the secretary of state be requested to lay on the desk of Senators one copy each of the Brevier Legislative Reports belonging to the State, now in the document room in the basement of the State building."

Which was accordingly done; that during the session of the Fifty-Second General Assembly of the State of Indiana, in 1881, the Senate authorized said plaintiff to continue as such reporter, and to take, make and publish the debates, votes and proceedings thereof, as appears by a resolution in the words and figures following:

"*Resolved*, That W. H. Drapier is authorized to continue the Brevier Legislative · Reports at the same price and the same number of copies furnished by him to every General Assembly since 1857, for seventeen years:..*Provided*, Such reports shall not exceed 750 in number."

That in accordance with said authority to furnish the same number of copies as heretofore, said plaintiff made, printed and published said debates, votes and proceedings as heretofore, for the use of said Fifty-Second General Assembly, and by virtue of an understanding had by plaintiff with the secretary of state, a copy of which is filed herewith and also made part hereof, plaintiff distributed to the members of said Assembly the usual number of said Brevier Legislative Reports so made and published; that in pursuance of the authority, privilege and direction received and given him by the respective houses of the Fifty-First and Fifty-Second General Assemblies of the State of Indiana, plaintiff did perform the duties required therein of him in this behalf as such stenographic Assembly reporter, and did make, print and publish, in manner and form as aforesaid, said debates, notes and proceedings of said Fifty-First and Fifty-Second General Assemblies of the State of Indiana; that the Senate and House respectively of the Fifty-First, Fifty-Second and Fifty-Third General Assemblies possessed all powers necessary for a branch of the legislative department of government of the State of Indiana, and as such the said Senate that convened in regular session January 4, 1883, in the Fifty-Third General Assembly, did constitute the half of and a continuing part of the same, and like Senate of the Fifty-Second General Assembly that convened January 6, 1881, and with like power

thereof, that said Fifty-Second General Assembly authorized and received, each member thereof, to wit, 150, seventeen hundred and twenty-seven copies of said Brevier Legislative Reports, and that said Senate of the Fifty-Second General Assembly likewise was and constituted a part of the legislative department of said State in the Fifty-First General Assembly, wherein and by the Houses thereof plaintiff was likewise employed and authorized by the sanction and direction of said Senate and House thereof, and by each severally as co-ordinate branches of government of said State, to report, make, print and publish the debates, votes and proceedings of the same, and which the said Senate and House of said Fifty-First Assembly did then and there order and receive seventeen hundred and twenty-eight copies of said Brevier Legislative Reports containing their said proceedings; that said services were rendered and reports furnished as aforesaid, and became and were a legislative expense of and owing by the State of Indiana, accruing to said State at each session as aforesaid, and the same became a debt, to be paid out of moneys appropriated for legislative purposes by her Legislature or co-ordinate branches thereof; that no allowance has heretofore been made plaintiff for the payment thereof; that in pursuance of the order contained in the aforesaid resolution of the Senate, as a co-ordinate branch of the government of the Fifty-Third General Assembly, and fully empowered so to act, full compensation was allowed plaintiff for said Brevier Legislative Reports of the Fifty-First and Fifty-Second General Assemblies, and the auditor of state was therein directed to draw his warrant at the end of the present session—meaning the regular session of the said Fifty-Third General Assembly—in favor of W. H. Drapier, stenographic Assembly reporter, for what may be due him for said Brevier Legislative Reports, for the payment of which there is money in the treasury upon which said warrant may be drawn; that in obedience to the authority and direction in said resolution contained, it became and was the duty of defendant, auditor

of state, upon the presentation of the account, when ascertained and properly acknowledged and verified under oath, for said Brevier Legislative Reports of and for the said Fifty-First and Fifty-Second General Assemblies of the State of Indiana, to draw his warrant on the treasurer of state in favor of plaintiff for the amount so then and there found due and owing plaintiff for making, printing and publishing said debates, votes and proceedings of the Fifty-First General Assembly and the Fifty-Second General Assembly respectively, as by said account is shown; and said plaintiff did then and there, on the 1st day of August, 1883, demand of the defendant, as auditor of state, at the office of the auditor of state in the city of Indianapolis, that he draw a warrant, as such auditor, on the treasurer of state in his favor for the further sum of $11,656.23, so due and owing him, in pursuance of the act appropriating money for legislative purposes, approved January 9th, 1883; and of the resolution of the Senate, adopted March 5, 1883; that the said Rice, as such auditor, utterly refused to issue a warrant as requested for said sum of money, or any other sum on account of said Brevier Legislative Reports. Wherefore the plaintiff prayed that a mandate might also be issued to the said Rice, as such auditor of state, commanding him to draw his warrant on the treasurer of state in favor of the plaintiff for said sum of $11,656.23.

The account which accompanied this second paragraph of complaint was as follows:

" THE STATE OF INDIANA, *Dr.*,

      To W. H. DRAPIER, *Stenographic Assembly Reporter:*

For 1,728 copies of the Brevier Legislative Reports of the debates and proceedings of the regular session of the Fifty-First General Assembly of the State, volume 17, at the price uniformly paid heretofore by the State, two-thirds of a cent per page

per copy, 252 pages, in compliance
with a Senate resolution passed
April 16th, 1881, and a Senate and
a House resolution passed March
5th, 1883 . . . . . . . . . .                                    $2,903 04
Do. do. special session,volume 18, 160
pages . . . . . . . . . . . .                                     1,221 12
For interest on above, fifty - four
months, at six per cent. . . . .                                 1,113 52
Binding 189 copies for members and
officers . . . . . . . . . . . .        $28 35
Interest fifty-four months at six per
cent. . . . . . . . . . . . .             7 65         36 00
                                        ————
Total . . . . . . . . . .                             $5,273 68
For 1,727 copies of the Brevier Leg-
islative Reports, regular session of
Fifty - Second General Assembly,
volume 19, 290 pages, in compli-
ance with the three resolutions
above referred to . . . . . . . $3,338 86⅔
Do. do. special session, volume 20, 182
pages . . . . . . . . . . . . .  2,095 42⅔
For interest on above, thirty months,
at six per cent. . . . . . . . .   815 14      6,249 43
                                 ————
Rebinding 200 copies of volumes 17,
18, 19 and 20 (covers destroyed by
a flood) . . . . . . . . . . .                        20 00
Paid United States, American and
Adams Express Companies for ex-
pressing books to members—6,910
volumes . . . . . . . . . . .        50 00
Interest twenty-four months . . . .   6 00            56 00
                                    ————
Total . . . . . . . . . . .                          $6,382 50
                                                     ————
"Grand Total . . . . . . . .                         $11,656 23"

An alternative writ of mandate based upon both paragraphs of the complaint was issued.

The defendant, appearing to the action, moved to quash the alternative writ, upon the ground, among others, that the facts charged in the complaint were insufficient to constitute a cause of action against him, but the motion was overruled. A demurrer being also overruled, the defendant made a return to the writ consisting of ten paragraphs, or separate and distinct specifications of defence. Demurrers were sustained to the first, second, fourth, fifth, sixth, seventh, eighth and ninth of these paragraphs, and, issue being joined upon the remaining paragraphs, the circuit court proceeded to hear the evidence, and made a finding that there was due to the plaintiff for Brevier Legislative Reports furnished to the General Assembly of this State at different times, as follows: For the Fifty-Third General Assembly, the sum of $3,600; for the regular session of the Fifty-Second General Assembly, the sum of $3,338.86; for the special session of that General Assembly, the sum of $2,095.42; for the regular session of the Fifty-First General Assembly, the sum of $2,903.04; for the special session of that General Assembly, the sum of $1,221.12; making in all the sum of $13,198.44. The circuit court thereupon rendered a judgment of recovery against the defendant, as auditor of state, for the several sums of money found to be due to the plaintiff as above, both in detail and in the aggregate, and for costs of suit, concluding with an order that the defendant, as such auditor, should draw warrants upon the treasurer of state for said several sums of money so found to be due to the plaintiff.

The first error assigned upon the proceedings below is upon the refusal of the circuit court to quash the alternative writ of mandate. A motion to quash a writ of mandamus is in the nature of a demurrer, and in that way the question of the sufficiency of the facts relied on to sustain the writ may be raised. 5 Wait's Practice, 581 ; Wood Mandamus, 41 ; Moses

Mandamus, 202; Tapping Mandamus, 368; *People, ex rel.,* v. *College of Physicians and Surgeons,* 7 How. Pr. 290.

Whenever the money necessary to pay a particular claim against the State has been appropriated by the Legislature, and the amount of the claim has been definitely ascertained in a manner prescribed by law, a refusal by the auditor of state to draw his warrant upon the treasurer of state for the payment of the claim will authorize the interposition of the courts by appropriate mandatory proceedings. In such a case it is not a sufficient objection that such proceedings afford an indirect method of suing the State. In general, however, since a State can not be sued in its own courts without its own legally expressed consent, the remedy by mandamus is not to be extended so as to become in effect a process against the State for the establishment of demands of an unliquidated nature, which properly fall within the cognizance of the Legislature. High Extraordinary Legal Remedies, section 100, *et seq.*

Section 2052, R. S. 1881, makes it a misdemeanor for the auditor of state to draw a warrant on the treasurer of state when there is no money in the latter's hands properly applicable to the payment of the warrant.

Section 5611 of R. S. 1881 makes it the duty of the auditor of state to " Examine and liquidate the claims of all persons against the State in cases where provisions for the payment thereof shall have been made by law; and when no such provisions, or an insufficient one, has been made, to examine the claim, and report the facts, with his opinion thereon, to the Legislature."

Sections 5638 and 5639 still further prohibit the auditor of state from drawing his warrant upon the treasurer of state on account of any claim or demand, unless the money necessary for the payment of the warrant has been appropriated by law, and stands to the credit of the proper fund to be used in its payment. *State, ex rel.,* v. *Porter,* 89. Ind. 260.

It is conceded in argument that an appropriation by law,

in some form, is necessary for the payment of any claim against the State, and this action is prosecuted upon the theory that by the act of January 9th, 1883, appropriating money to pay the expenses of the Fifty-Third General Assembly of the State, made an appropriation out of which the several sums of money claimed to be due to Drapier may be lawfully paid.

The first section of the act of January 9th, 1883, thus referred to, appropriated the sum of $125,000 to defray the expenses of the General Assembly then in session, with a proviso that if any amount should remain after the expenses of that General Assembly were paid, the amount so remaining should at once revert to the general fund. The second section made it the duty of the auditor of state to audit the accounts and issue his warrants upon the treasurer of state for the per diem and mileage of senators and representatives as allowed by law, and also such additional allowances as might be provided by the concurrent action of both houses, upon the certificate, in case of senators, of the president of the Senate, and in the case of representatives, upon the certificate of the speaker of the House, setting forth the time served and the amount of the mileage and allowance to which such senators or representatives might be entitled.

The third section required the auditor of state to audit the accounts and issue his warrants upon the treasurer of state for the per diem of officers of the Senate and House of Representatives and their assistants and appointees, including clerks and assistants to committees and clerk of the State librarian appointed by authority of both Houses, the pay of officers and employees to be as then provided by law, or as might be otherwise fixed by that General Assembly.

A careful examination of the provisions of this act will disclose, that the amount of money appropriated by it was to be used exclusively in defrayal of the expenses of the General Assembly which enacted it and was to be applied, *First.* In payment of the per diem and mileage of senators and repre-

sentatives as allowed by law; *Secondly.* In payment of the per diem of the officers and employees of the Senate and House of Representatives, whether chosen or appointed by each House separately or by both houses jointly. Such per diem to be paid at the rates then prescribed by law or at such other rates as might thereafter be fixed by the General Assembly. *Thirdly.* In payment of such additional allowances as might be made by the concurrent action of both houses.

The methods by which, under our system of parliamentary law, a Legislature exercises its power and jurisdiction, each in a different way, are, *First.* By motion; *Second.* By resolution; *Third.* By concurrent resolution; *Fourth.* By joint resolution; *Fifth.* By bill. Of these methods the motion is the least comprehensive and involves the exercise of parliamentary power in its simplest form. It sets the body in motion and again dissolves it, and is auxiliary merely to the ordinary work of legislation.

The next in the ascending gradation of parliamentary methods is the *resolution*, which declares some purpose, expresses a will, or prescribes an order, or formulates a command of the legislative body, usually not incidental to the ordinary course of business. A resolution, as well as a motion, is obligatory only upon the house which adopts it, and in this respect is inferior in efficiency to both a concurrent and a joint resolution, each of which is, in its turn, less effective, as the expression of legislative will, than a bill where enacted into a law. *May* v. *Rice*, 91 Ind. 546.

The resolution of the Senate, ordering the auditor of state to draw his warrant in favor of Drapier, did not purport to be, and was not in fact, anything more than a simple resolution of that body. The order made by the House, on the motion of Mr. Mosier, for the distribution of a certain number of Brevier Reports, was in no sense a concurrence with the resolution of the Senate.

As has been seen, that motion made no reference to the resolution of the Senate, and had an essentially different ob-

ject in view. The action taken upon that motion was the expression of the will of the House, not only upon a different subject, but by a method unlike that adopted by the Senate. The two houses did not, therefore, by any concurrent action, order the allowance of Drapier's claim. Such concurrent action was an indispensable prerequisite to its payment out of the money appropriated by the act of January 9th, 1883, *supra.* Besides, much the greater part of the claim, as is apparent on the face of it, did not accrue under any order, either express or implied, of either house of the Fifty-Third General Assembly. All that part of the claim, which accrued in connection with previous General Assemblies, could not in any event have been properly certified to the auditor of state as expenses of the General Assembly which the money appropriated as above was set apart to pay. Considered in the most favorable light to Drapier, the complaint presents the case of an unliquidated and uncertified claim against the State, for the payment of which no provision has been made by law, and which can not consequently be paid without further legislation.

The act appropriating money for the expenses of the Legislature of 1883 clearly contemplated that all legislative expenses, other than per diem and mileage, should be first liquidated and then certified, before the auditor of state was required to draw his warrant. Conceding, therefore, that so much of the claim presented in this case, as accrued during the session of this last named Legislature, constituted legitimate legislative expenses, still no part of the claim can be paid out of the appropriation for the expenses of that session, for want of liquidation by the Legislature and the certificate of one or both of the presiding officers of the two houses. After all that has been said, a single proposition may seemingly be accepted as decisive of this cause, and that is, can a simple resolution of the Senate be made to amend, modify or vary the operation of a regularly enacted statute?

In the light of all that has preceded, and considered with

reference to the essential nature of legislative proceedings, the answer to that proposition must inevitably be in the neg-ative.

The views we have expressed lead us to the conclusion that the circuit court erred in overruling the motion to quash the alternative writ of mandate, and that in consequence the subsequent proceedings in the cause can not be sustained.

The judgment of the circuit court is reversed, at the costs of Drapier, the relator, and the cause is remanded with in-structions to sustain the motion to quash the alternative writ of mandate.

Filed March 12, 1884.    Petition for a rehearing overruled April 23, 1884.