Carr, Auditor, *et al. v.* The State, *ex rel.* Coetlosquet.

No. 15,908.

## CARR, AUDITOR, ET AL. *v.* THE STATE, EX REL. COET-LOSQUET.

CONTRACT OF A STATE.—In entering into a contract a State lays aside its attributes as a sovereign and binds itself substantially as one of its citizens does when he enters into a contract. By the act of entering into a contract it abrogates the power to annul or impair it.

ACTION AGAINST A STATE.—*Failure to Make Appropriation.—Mandate.*—A State can not be sued, nor can an action for mandate to compel the payment of a valid claim of a State be maintained against its officers, unless an appropriation has been made by the Legislature for the payment of such claim; but a proceeding for a mandate may be maintained against the auditor of state, if a proper appropriation has been made, to compel him to draw a warrant for the amount due.

CONSTITUTIONAL LAW.—*One Department Controlling Another.*—One department of a State can not control another department; nor can the courts supply the omission of the Legislature to make an appropriation.

APPROPRIATION.—*Implied, what is.—Sufficiency.*—An appropriation need not be made in any particular form or in express terms; it may be implied. It is sufficient if the intention to make the appropriation is clearly evinced by the language employed in the statute upon the subject, or if it is evident that no effect can possibly be given a statute unless it be construed as making the necessary appropriation. Nothing more is requisite than the designation of the amount and the fund out of which it shall be paid; but a promise to pay, contained in a bond of the State, lawfully issued, is not an appropriation.

SAME.—*No Funds in Treasury.*—An appropriation may be made even when there is no funds in the treasury to meet it.

REPUDIATION.—*Presumption.*—A State has no right to repudiate its valid obligations, neither directly nor by indirection; and no such a purpose will be imputed to it by the court unless a contrary intention is clearly manifested. In ascertaining whether or not a State intended to repudiate a valid claim the whole course of legislation upon the subject will be examined by the courts.

SAME.—*Change of Remedy.*—A State has the power to withdraw a remedy, and thus defeat its creditor.

PAYMENT.—*Place of can not be Changed by Debtor.*—A debtor can not change the place where he has agreed to pay off his obligation.

CONTRACT.—*Law Part of.—Effect of Change of Law.*—The law in force at the time a contract is made enters into and becomes a part of it; and no subsequent change of the law can affect such contract.

REPEAL OF STATUTES.—*Repealing Act Unconstitutional.*—A repeal of a statute can not be accomplished by an unconstitutional statute; and if an act

Carr, Auditor, *et al. v.* The State, *ex rel.* Coetlosquet.

repealing a former act is invalid, an appropriation made by such former act is not affected by such invalid act, and remains in force.

SAME.—*Effect upon Appropriation.*—A State can not invalidate its contract after it is made by repealing the statute authorizing its creation; and an attempt to annul such a contract does not affect an appropriation made in the statute authorizing the assumption of the obligation.

INTEREST.—*Liability of a State for.*—A State is not liable for interest upon its obligations unless it contracts to pay it in pursuance of a statute authorizing the contract. The general interest statute does not apply to the State.

SAME.—*Interest after Debt Due.—Compound Interest.*—A statute authorized the issue of bonds of the State bearing interest at the rate of five per cent. per annum, payable semi-annually. No coupons were issued for the interest. If any instalment of interest was not demanded at a certain named place before the expiration of thirteen months from the time it became due, the State had the right to pay it at its own treasury. The bonds were made made payable at the end of twenty years from the time of their issue, and after twenty years the State might, at its pleasure, redeem them.

*Held,* that the bonds drew five per cent. interest after the expiration of the twenty years; but that interest upon (or compound) interest could not be recovered.

STATE SINKING FUND DEBT.—*Acts of 1846, 1847 and 1872.—Interest.— Failure to Demand when Bonds were Due.*—State bonds were issued in 1852 under the acts of 1846 (Acts 1846, p. 1), 1847 (Acts 1847, p. 3), authorizing the funding of the State debt, payable in the city of New York. The act of 1846 created a sinking fund for the payment of the State's indebtedness. By an act of 1872 (Acts 1872, p. 27), the sinking fund was merged in the general fund of the State, and the State agency in the city of New York, and the sinking fund commissioners, established by the act of 1846, were abolished. Previous to 1872 such commissioners had stopped the payment of interest, and had declared that no interest would be paid on the bonds issued by authority of the acts of 1846 and 1847, because of the fact that none had been demanded for several years. Before stopping the payment of interest the commissioners had published a notice of their intention to do so, as to all bonds not presented in New York at the agency by a certain named date. This action of the commissioners was ratified by the act of 1872, and the bonds and interest declared payable at the office of the State treasury. In 1865 (Acts 1865, p. 48) an appropriation was made to pay off all of the State's indebtedness. The bonds in suit were not presented for payment, nor was payment demanded, until about 1890.

*Held,* that the action of the sinking fund commissioners in stopping payment of interest was unauthorized; that that part of the act of 1872 ratifying such action was unconstitutional, and that such bonds drew

Carr, Auditor, *et al. v.* The State, *ex rel.* Coetlosquet.

interest until actually paid at the rate specified in the bonds. Compound interest was denied.

From the Marion Superior Court.

*A. G. Smith,* Attorney General, and *J. H. Gillett,* for appellants.

*I. P. Gray* and *P. Gray,* for appellee.

ELLIOTT, J.—The Legislature of the State in 1846 and 1847 passed laws providing for the funding and payment of the public debt. Those acts authorized the auditor and treasurer of the state to execute certificates pledging the irrevocable faith of the State to the payment of the sum named in each of the certificates. Among the certificates issued were those upon which this action is founded. They are dated the 3d day of May, 1852, and are payable at the pleasure of the State at any time after twenty years from the 19th day of January, 1846. They provide for the payment of interest semi-annually at the rate of five per centum per annum; the days of such semi-annual payments are designated as the first days of January and July in each year. The payee of the certificates is described as Jean Baptiste Maurice du Coetlosquet, of Paris, and provision is made for the registry of the certificates. The place of payment of principal and interest is declared to be the city of New York.

No question is made as to the validity of the certificates, nor could any be successfully made. The certificates were issued under valid legislative authority and in accordance with duly enacted laws. There is, therefore, a complete and binding contract; no element is wanting nor is any incident absent.

As there is a perfect contract, the State is bound to perform it according to its legal tenor and effect, and to redeem the pledge it has declared to be irrevocable. In entering into the contract it laid aside its attributes as a sovereign and bound itself substantially as one of its citizens does

when he enters into a contract. Its contracts are interpreted as the contracts of individuals are, and the law which measures individual rights and responsibilities measures, with few exceptions, those of a State whenever it enters into an ordinary business contract. *Hartman* v. *Greenhow*, 102 U. S. 672; *Poindexter* v. *Greenhow*, 114 U. S. 270; *Keith* v. *Clark*, 97 U. S. 454; *Murray* v. *Charleston*, 96 U. S. 432; *Gray* v. *State, ex rel.*, 72 Ind. 567; *State, ex rel.*, v. *Cardozo*, 8 S. C. 71; *People* v. *Canal Com'rs*, 5 Denio, 401; *Georgia, etc., Co.* v. *Nelms*, 71 Ga. 301; *Lowry* v. *Francis*, 2 Yerg. 534; *Grogan* v. *San Francisco*, 18 Cal. 590.

The principle that a State, in entering into a contract, binds itself substantially as an individual does, under similar circumstances, necessarily carries with it the inseparable and subsidiary rule that it abrogates the power to annul or impair its own contract. It can not be true that a State is bound by a contract and yet be true that it has power to cast off its obligation and break its faith, since that would involve the manifest contradiction that a State is bound and yet not bound by its obligation. It may have the might and means of defeating the enforcement of a contract, yet, in a just sense, have no power to do so. Might and opportunity do not constitute power in the true sense; to constitute power another element must be present, and that element is right. If right is absent there is no power. Legislatures may, by a failure to make an appropriation, defeat a just claim, or, indeed, block the wheels of government, but under the Constitution they have no power to do any such thing. It seems very clear, therefore, that there is no constitutional power to annul or impair a valid contract entered into by a State, and so it has long been settled. *Fletcher* v. *Peck*, 6 Cranch, 87; *Terrett* v. *Taylor*, 9 Cranch, 43; *Trustees, etc., Co.* v. *Beers*, 2 Black, 448; *Davis* v. *Gray*, 16 Wall. 203; *Hall* v. *Wisconsin*, 103 U. S. 5; *People* v. *Platt*, 17 Johns. 195; *Montgomery* v. *Kasson*, 16 Cal. 189; *State, ex rel.*, v. *Barker*, 4 Kansas, 379.

There is one essential and far-reaching difference between the contracts of citizens and those of sovereigns, not, indeed, as to the meaning and effect of the contract itself, but as to the capacity of the sovereign to defeat the enforcement of its contract. The one may defeat enforcement, but the other can not. This result flows from the established principle that a State can not be sued. *Hans* v. *State*, 24 Fed. Rep. 55. Nor is this the only method under such a Constitution as ours by which a State may defeat the enforcement of its obligation, for the failure to make the necessary appropriation will effectually accomplish that object. *State, ex rel.*, v. *Porter*, 89 Ind. 260; *May* v. *Rice*, 91 Ind. 546; *Rice* v. *State, ex rel.*, 95 Ind. 33. The Legislature has, therefore, the ability to avoid payment of the obligations of the State by a failure or refusal to make the necessary appropriation, although that body can not impair the obligation of the contract. Creditors who accept the obligations of a State are bound to know that they can not enforce their claims by an action against the State directly, nor by an action against its officers where no appropriation has been made as the Constitution requires. If, however, there is an effective appropriation, then an officer whose duty it is to draw a warrant upon the fund set apart by statute may be coerced into a performance of that duty. *Gray* v. *State, ex rel., supra.* But there is no power that can coerce the Legislature into making an appropriation, no matter how strong the justice of the creditor's claim, nor how plain the duty seems. Neither directly nor indirectly can such a result be accomplished; hence it is that where there is no statute making an appropriation no action will lie against the officers of the State. *State* v. *Stanton*, 6 Wall. 50; *Hans* v. *State, supra.* Whether an appropriation shall or shall not be made is a legislative question, and over purely legislative questions the courts have no supervision or control. A question of that character is beyond the touch of the judiciary, for one department of government can not enter the

domain of another. *Smith* v. *Myers,* 109 Ind. 1, and authorities cited ; *State, ex rel.,* v. *Haworth,* 122 Ind. 462, and authorities cited ; *Wilson* v. *Jenkins,* 72 N. C. 5 ; *Goddin* v. *Crump,* 8 Leigh, 154 ; *Burch* v. *Earhardt,* 7 Oregon, 58 ; *Franklin* v. *State Board, etc.,* 23 Cal. 173 ; *People* v. *Pacheco,* 27 Cal. 175.

The right of the relator to compel the auditing and payment of his claim must, it is evident, depend upon whether there is an appropriation upon which a warrant can be rightfully drawn, and out of which it can be lawfully paid ; for if there is no such appropriation the courts are powerless to assist him to enforce his contract, although they may not doubt its validity.

It is clear upon authority that the promise to pay, contained in the certificate, is not an appropriation. *Ristine* v. *State, ex rel.,* 20 Ind. 328 ; *State, ex rel.,* v. *Ristine,* 20 Ind. 345 ; *Newell* v. *People,* 3 Seld. 9 ; *Sunbury, etc., R. R. Co.* v. *Cooper,* 33 Pa St. 278.

It does not, however, follow that because no claim can be be enforced where there is no appropriation, the appropriation must be made in a particular form or in express terms. It is sufficient if the intention to make the appropriation is clearly evinced by the language employed in the statutes upon the subject, or if it is evident that no effect can possibly be given to a statute unless it be construed as making the necessary appropriation. In *Ristine* v. *State, ex rel., supra,* it was said : "An appropriation of the money to a specified object would be an authority to the proper officers to pay the money, because the auditor is authorized to draw his warrant upon an appropriation, and the treasurer is authorized to pay such warrant if he has appropriated money in the treasury. And such an appropriation may be prospective, that is, it may be made in one year, of the revenues to accrue in another or future years, the law being so framed as to address itself to such future revenues. So a direction to

the officers to pay money out of the treasury upon a given claim, or for a given object, may, by implication, include in the direction an appropriation." The point affirmed in the case of *Reynolds* v. *Taylor*, 43 Ala. 420, is thus stated by the reporter : " If the salary of a public officer is fixed, and the times of payment prescribed by law, no special annual appropriation is necessary to authorize the auditor to issue his warrant for its payment." To the same effect is the decision in *Nichols* v. *Comptroller*, 4 Stew. & P. 154. The same principle was asserted in a case where the Constitution, in general terms, provided what salary should be paid a public officer. *Thomas* v. *Owens*, 4 Md. 189. That case was followed and approved in the case of *Green* v. *Purnell*, 12 Md. 329. In the fully considered case of *State, ex rel.,* v. *Hickman*, 8 Law. Ann. R. 403, the doctrine of the Maryland cases was approved and enforced. A similar doctrine was declared in the case of *State, ex rel.,* v. *Weston*, 4 Neb. 216. The question as to what constitutes an appropriation was discussed by FIELD, C. J., in *McCauley* v. *Brooks*, 16 Cal. 11 (28), in an able opinion, and it was there said : " To an appropriation within the meaning of the Constitution, nothing more is requisite than a designation of the amount, and the fund out of which it shall be paid. It is not essential to its validity that the funds to meet the same should be at the time in the treasury. As a matter of fact, there have seldom been in the treasury the necessary funds to meet the several amounts appropriated under the general appropriation act of each year." It is evident from these authorities that an appropriation may be implied, and the debatable question is, what provisions are sufficient to create such an implication ? To determine this question, it is necessary to examine the legislative enactments subsequent to those under which the bonds were issued, and from them ascertain whether an appropriation has been made. The decisions in the cases of *Ristine* v. *State, ex rel., supra,* and *State, ex rel.,* v. *Ristine, supra,* declare that the acts of 1846 and 1847 did not make the requi-

*site* appropriation, and hence we must search. for it elsewhere.

While it is true that the acts of 1846 and 1847 can not, under the decisions referred to, be considered as making an appropriation, still they do exert some influence upon the question, and can not pass unheeded. They do pledge the faith of the State to the payment of the debt, and do provide that the certificates, together with the interest thereon, shall be paid out of the State revenues. Acts of 1847, p. 1. Independently of any provision of this character the presumption is, and ought to be, that the State meant to pay its debt, for the law, as well as equity, imputes an intention to fulfil an obligation. In justice a State has no right to repudiate its contract, either directly or by indirection, and no such purpose should be imputed to it. In *McCauley* v. *Brooks, supra,* it was said: "We deny both the right to repudiate and the fact of repudiation. The State possesses no such right, but upon her rests the same obligations to do justice and keep faith as rest upon individuals." In view of the provisions of the act of 1847, and of the general principles of equity and justice, the courts must assume, unless a contrary intention is clearly manifested, that the State did not intend to defeat its creditors by direct or indirect measures; hence we must assume in the construction of subsequent statutes (unless to make this assumption violates the language employed) that the State meant to make good its declaration in the act of 1847, and perform the promise contained in the contract of 1852. A series of acts, extending over a period of many years, shows an intention to provide means for the payment of the State debt, for various statutes provide measures for raising money to pay the certificates issued to the creditors of the State under the acts of 1846 and 1847. 1 R. S. 1852, p. 408; Acts 1861, p. 107; Acts 1871, p. 6.

It is unnecessary to refer to all of those acts, but of two of them it is necessary to speak with some particularity. In 1865 an act was passed wherein it was declared that it was

the purpose of the General Assembly to provide for the prompt payment of the bonds or certificates issued under the acts of 1846 and 1847, and in that act duties concerning the payment of such evidences of indebtedness were imposed upon certain of the State officers. Acts 1865 (Spec. Sess.), p. 49. That act contains, among others, this provision : "All the money and funds properly belonging to either of said funds shall be denominated the State Debt Sinking Fund, and all such moneys are hereby set apart for the payment of such principal exclusively, and shall not, under any circumstances, be drawn or paid out of the State treasury for any other purpose whatever." This provision, taken in connection with other provisions of the act, so clearly makes an appropriation that there is no room for controversy, much less necessity for amplification. So far we encounter no difficulty, but such difficulties as we do encounter arise out of the act of December 13th, 1872. The third section of that act reads thus :

" Section 3. That the State debt sinking fund as a separate fund of the state treasury be discontinued from and after the 1st day of February, A. D. 1873, and be merged in, and constitute a part of, the general fund of said treasury, and all sums of money or claims now lawfully payable out of the said State debt sinking fund, shall, after the date last aforesaid, be payable out of the general fund of the State treasury. "

This provision, even if it stood alone, must be regarded as making an appropriation within the meaning of the Constitution, but if it were true that there might be doubt if the provision were isolated from all others and considered in itself, there can possibly be none when it is considered, as it must be, in connection with the prior statute, and, under the rules of the law we have stated, so that if there is no valid provision in other sections of the act of 1872 contravening that contained in section 3, it must be held that there was a valid appropriation. If there is a provision destroying the appropriation it must be that contained in the

first section of the act of 1872, since no other act professes to annul the appropriation. That section reads thus: "That the said action of the said board of State debt of sinking fund commissioners in stopping the interest on the two and a half and five per cent. certificates of State stocks, as aforesaid, is hereby ratified and approved, and that from and after the first day of February, A. D., 1873, the principal of such of said certificates as are still outstanding, with the interest that may have accrued thereon prior to the stoppage of interest thereon, as aforesaid, shall be payable at the treasury of the State, and not elsewhere." To understand this section it is necessary to quote one paragraph of the preamble of the act and to mention what action of the sinking fund commissioners it refers to. The paragraph of the preamble to which we refer reads as follows: "And, whereas, The board of State debt sinking fund commissioners of this State, on or about the first day of September, 1870, stopped the payment of interest on all the two and a half and five per cent. certificates of State stocks then outstanding, because of their non-presentment for payment, due notice having been given requiring their presentment for payment at the State agency in the city of New York, where the money was on deposit to redeem them." The action of the sinking fund commissioners, to which reference is made, consisted in ordering a presentment for payment and in giving notice by publication that unless the certificates were presented within a given time, interest should cease. If the provisions of section one are valid, there is no appropriation, but if they are invalid the appropriation made by the act of 1865 has not been annulled, since the effect of section 3 of the act of 1872 is to continue the appropriation; the only change made is in charging the general fund instead of the state debt sinking fund. That the appropriation as to the principal continued in force admits of no debate, and our judgment is that there is little doubt that it continues in force as to the interest promised to be paid by the State.

The board of sinking fund commissioners had no authority to alter or abrogate the contract made in 1852, nor to impair it in any material particular, for no statute assumed to confer upon them any such power. Into that contract the law entered, as it does into every contract, as an important factor. *Long* v. *Straus*, 107 Ind. 94; *Coggeshall* v. *State, ex rel.*, 112 Ind. 561. The elements of law embodied in a contract are as unchangeable as the elements of fact. The rights flowing from a contract can not be impaired by taking any element of law from the obligation. As the law existed, and long has existed, the holder of a registered certificate of indebtedness, payable at a designated place, can not be deprived of his rights by a subsequent order of the debtor that it shall be payable elsewhere, or that in the event that it is not presented at the place designated the interest should cease. The only method in which the debtor can escape liability is by having the money ready for the creditor at the place of payment designated by the contract. *City of Jeffersonville* v. *Patterson*, 26 Ind. 15; *Glatt* v. *Fortman*, 120 Ind. 384; *Wallace* v. *McConnell*, 13 Peters, 131; *Gelpcke* v. *City of Dubuque*, 1 Wall. 175; *Ward* v. *Smith*, 7 Wall. 447. The authority conferred upon the board of sinking fund commissioners was to pay the debt, not to change the contract, so that its action in assuming to alter the contract was entirely destitute of force.

As the action of the board of sinking fund commissioners was ineffective, the question necessarily turns upon the provisions of the act of 1872, which assume to infuse vitality into the action of the board by confirming it. We do not deem it necessary to inquire whether a void act can be ratified or validated in such a case as this, for if the appropriation was annulled the question is not important, and if it was not annulled the question is of still less importance. The pivotal question is whether the appropriation was annulled, for, as we have seen, if there was no appropriation this action can not be maintained.

The act of 1872 does not annul the appropriation. In the first section of that act the General Assembly assumes to change the contract made by the State with its creditor, and this that body had no power to do. If there was no power to alter or annul the contract, then the appropriation previously made remains unaffected and in force. We suppose it clear that no law can be changed or repealed by a subsequent act which is void because unconstitutional. If, for illustration, the Legislature should incorporate a provision annulling an appropriation for the payment of the State debt in an act regulating the taking up of estrays, no one would doubt that the attempt to annul the appropriation would be utterly futile, and that the appropriation would remain in full force. The principle involved in the imagined case is the same as that involved in the actual case, for the repeal of a statute can not be accomplished by an unconstitutional act. An act which violates the Constitution has no power and can, of course, neither build up nor tear down. It can neither create new rights nor destroy existing ones. It is an empty legislative declaration without force or vitality.

The right of the auditor to refuse to audit a claim where an appropriation has been annulled by an effective statute must be conceded, for the principle which requires that conclusion is declared in the case of *Louisiana* v. *Jumel*, 107 U. S. 711. But the question here is not whether the effective withdrawal of the appropriation will defeat the creditor, but the question is, was there a valid enactment annulling the prior statutes which made the appropriation? It can make no difference for what cause the statute assuming to abrogate the appropriation is unconstitutional; if in reality it is unconstitutional, the cause of its infirmity is immaterial. Here the infirmity is that the General Assembly, instead of directly annulling or repealing the appropriation, attempted to accomplish that end by annulling the contract of the State, and, as that body can not annul the contract, its action is fruitless. Either this conclusion must be affirmed or else

it must be affirmed that a State may annul its contract, and this, as we have shown, the Constitution forbids.

There is no question in this case as to the power of the State to withdraw a remedy and thus defeat its creditor. As we have seen, the question here is whether the appropriation made by prior statutes was destroyed by the act of 1872; if it was not the remedy is unaffected, for there is no suggestion in any statute looking in the direction of a change of the rule that has so long prevailed in this State, namely, that where there is a valid claim and an effective appropriation the auditor will be compelled by mandate to draw the proper warrant.   In holding, as we do, that this action will lie, we do not adjudge that a State is bound to continue a remedy or an appropriation once provided ; we decide simply that where an appropriation is once effectively made it will stand until annulled by some constitutional statute, and that an enactment assuming to impair a contract of the State is not such a statute.

Courts are bound to ascertain and give effect to the legislative intention when expressed as the Constitution sanctions; but neither the courts nor the Legislature can disregard the commands of the Constitution.   No enactment can carry into effect a legislative intention if it be expressed in an unconstitutional mode.   The infirmity in the first section of the act of 1872 consists in assuming to do what the Legislature has no power to do.   It assumes to do what can not be done without a violation of the constitutional provision forbidding the impairment of the obligation of a contract. It is, as every one knows, the duty of the judiciary to declare all enactments void which clearly infringe the provisions of the paramount law, and, in the discharge of that duty, we must adjudge that the attempt to annul the contract evidenced by the obligations of the State is utterly futile.   As there is no constitutional expression of a legislative intention to abrogate the appropriation made for the payment of the State debt, there is no intention which the courts can

carry into effect, hence there is but one thing for us to do, and that is to adjudge that the appropriation remains unannulled.

Freely granting, as we do, that it is the duty of the judiciary to ascertain and give effect to the properly expressed legislative intention, we, nevertheless, affirm that we have no right to give life and vigor to an act which the Constitution makes lifeless and powerless. If it could be granted that the courts can give life to an unconstitutional statute, then the conclusion stated in the very able argument of the counsel for the appellant would necessarily follow, but this no court can do, so that the conclusion falls to the ground. Without the premise the conclusion is absolutely foundationless.

It is, in truth, unnecessary to inquire or decide whether the act of 1872 does, or does not, make an appropriation, for, conceding that it does not, and conceding, also, that it is proper to consider the invalid provisions of that act, still, the result must be the same, for if there was no repeal of the appropriation made by former acts, that appropriation remains in full force and vigor.

The contract of the State, as we construe it, contains a promise to pay interest, and that promise, under the settled rule to which we have referred, binds the State to pay interest upon the principal sum. This disposes of the general question as to the right of the relator to interest under the contract; but the entire question is not disposed of by the principle stated, since the general rule that a State is not liable for interest unless it contracts to pay it exerts an important influence upon another phase of the question. To justly apply this general rule that a State is not liable for interest in the absence of a contract agreeing to pay it, and to ascertain whether our construction of the contract is correct, we must look to the provisions of the statute, to the language of the contract, and to the facts bearing upon the question of interest. Section 5 of the act of 1846 reads as

follows : " The interest on the stock hereby created, shall be payable half yearly, at the city of New York on the first days of January and July of each year, commencing on the first day of July, 1847. But if the interest for any half year shall not be demanded before the expiration of thirteen months from the time the same became due, it shall only be demandable afterward, at the treasury of the State, and for the payment of the interest and the redemption of the principal as herein provided, the faith of the State is hereby solemnly pledged." The certificates show, on their face, that they were issued under the provisions of this statute, and subsequent statutes, as we have indicated, recognize the obligation to pay interest. The provision we have quoted from the act of 1847 contemplates payment of the interest upon the principal debt after the maturity of the obligations, for it provides for cases where the instalments remain unpaid for thirteen months after maturity. The act of 1846 provides that the certificates shall " be redeemable at the pleasure of the State, after twenty years." These provisions clearly express a promise to pay interest on the principal debt after maturity, and that promise is embodied in the certificates. It seems quite clear, therefore, that there is a contract binding the State to pay interest on the principal debt, and until it performs its contract that promise remains valid and enforceable.

The next question which naturally arises is, what rate of interest did the State contract to pay? The law, as we have said, is that a sovereign is bound to pay only such interest as it binds itself by contract to pay. *United States* v. *North Carolina*, 136 U. S. 211 ; *United States, ex rel.,* v. *Bayard,* 127 U. S. 251 ; *United States* v. *Sherman,* 98 U. S. 565 ; *In re Gosman,* 17 Ch. D. 771. The contract of a sovereign with respect to the payment of interest is governed by a different rule from that which prevails in cases of contracts of citizens, for where there is no promise to pay interest a sovereign is exempt. We are, therefore, required to determine what rate the sov-

NOVEMBER TERM, 1890.          219

Carr, Auditor, *et al. v.* The State, *ex rel.* Coetlosquet.

·ereign agreed to pay, and when that is determined the rate recoverable is ascertained and fixed. In this instance the only rate mentioned in the statutes or contract is five per centum, and no other can be recovered, since the only rate recoverable is that fixed by the contract. It is probably true that the opinion in the case of *Gray* v. *State, ex rel., supra,* ·contains some propositions not easily harmonized with the doctrine of the Supreme Court of the United States, but, however this may be, there is an essèntial difference between that case and the one now at our bar. One essential difference is that in this case it appears affirmatively that no ·coupons were issued for the interest, while in the case referred to there were coupons. Another difference is that it here appears that thirteen months elapsed without the presentation of the certificates on New York, thus giving the State the right to pay at its own treasury under the provisions of the act of 1847, and this fact exerts an important influence upon the question. Under these circumstances it seems clear that the interest recoverable is that fixed by the statutes and the contract, for the State undoubtedly had a right to declare what interest it would pay. This it did by providing that the certificates should run for twenty years at five per centum per annum interest, and that after twenty years it might, at its pleasure, redeem them. We can conceive no tenable ground upon which it can be asserted that the rate of interest increased after twenty years, for it seems clear to us that no matter how long the bonds were allowed to run the rate of interest was that fixed by the statutes and the contract. Our final conclusion upon this branch of the case is that the relator is entitled to interest on the principal sum at the rate fixed by the statutes and the contract made under them, but to no more.

The remaining question is this: Is the relator entitled to interest upon interest? The contention of his counsel is that he is not asking compound interest, but that he is asking interest upon each semi-annual instalment of interest which

the State failed to pay. This question must be examined in the light of the rule that a sovereign State is not liable for interest except in cases where it has promised to pay interest. If there is no such promise, no liability exists. The authorities to which we have referred seem to us to be satisfactory, and to settle the question against the relator, but we have examined others and find them strongly against him. In the case of *State, ex rel.,* v. *Board, etc.,* 36 Ohio St. 409, it was held that in the absence of a promise to pay interest none can be recovered against a State, and that a State is not within the provisions of a general statute providing for the payment of interest, in cases where money is wrongfully withheld from a creditor. The court put its decision upon the familiar rule that a sovereign is not bound by the words of a statute, unless it is expressly named, and in support of its conclusion cited these cases : *Trustee, etc.,* v. *Campbell,* 16 Ohio St. 11; *Josselyn* v. *Stone,* 28 Miss. 753; *State* v. *Kinne,* 41 N. H. 238 ; *Attorney Gen'l* v. *Cape Fear, etc., Co.,* 2 Iredell Eq. 444; *Auditorial Board* v. *Arles,* 15 Texas, 72; *State* v. *Thompson,* 5 Eng. (Ark.) 61. In *Wightman* v. *United States,* 23 Ct. Cl. R. 144, the general rule was stated, and it was said : " Hence, there is no law fixing a rate of interest for all classes of the public debt, and a long established public policy has been to pay interest only where it is a subject of express agreement or of positive enactment." It was held in the case of *Tillson* v. *United States,* 100 U. S. 43 that a statute referring a claim did not authorize a recovery of interest in the absence of words expressly providing for the payment of interest. It is impossible to escape the effect of these authorities, and considerations may be readily suggested which increase their force. One is that there is no right to coerce the payment of a debt due from a sovereign, and, of course, a sovereign may impose limitations upon its liability. This it does when it provides for the payment of interest, since it agrees to pay that rate and no other, and, indeed, in the absence of such a provision no enforceable lia-

bility would exist to pay any interest whatever. Again : Under constitutions like ours there is no enforceable liability until an appropriation is lawfully made, and an appropriation can not be construed as extending to claims which a State is not under an express contract to pay. If this be true it must also be true that an appropriation to pay the principal and interest of a bond only authorizes the payment . of interest upon the principal, and not upon the interest.

We do not inquire whether an individual would, or would not, be liable for interest upon interest, as it is enough to adjudge that a sovereign State is not liable where, as here, there is no contract to pay interest upon interest.

Judgment affirmed.

Filed Feb. 6, 1891.