93 P.2d 993

## MUNRO v. CITY OF ALBUQUERQUE.

### No. 4488.

Supreme Court of New Mexico.

Sept. 7, 1939.

Donald B. Moses, of Albuquerque, for appellant.

Simms, Modrall & Seymour, of Albuquerque, for appellee.

Kiker & Sanchez and Anthony J. Albert, all of Santa Fe, amici curiæ.

MABRY, Justice.

The plaintiff sought in the district court a declaratory judgment to determine the respective rights of bondholders to collect, and the corresponding duty of the City of Albuquerque to pay interest after maturity upon the principal of certain paving bonds and upon the interest coupons attached to

such bonds issued pursuant to the provisions of Section 90-1701, Comp.Laws, 1929.

The plaintiff, a bondholder, alleges in his complaint, the allegations of which are admitted by the defendant, that he is the owner and holder of two bonds in Paving District No. 19 of the said city; that the defendant has failed and neglected to pay said interest coupons numbered 19, 20, 21, and 22, which respectively became due on the 1st day of November, 1935, the 1st day of May, 1936, the 1st day of November, 1936, and the 1st day of May, 1937, and has also failed and neglected to pay the principal amount of the bond, the maturity date of which was May 1, 1937.

Plaintiff prays for a declaratory order of the court determining whether interest is payable on the coupons and on the bonds from their maturities until paid, and if interest be payable on the bonds, or the coupons, or both, what shall be the priorities of the bondholders and what shall be the order of payment.

Appellant Munro will hereafter be referred to as Plaintiff and Appellee City as Defendant.

Plaintiff assigns as error the court's ruling (1) that the interest coupons did not bear interest from maturity date; and, (2) that though the court held interest to be payable on the principal of such bonds from maturity until paid, it erroneously concluded that this should be paid to all bondholders equally and ratably and this only after the payment of the principal of all the bonds of the district.

Plaintiff contends that the court should have held that the interest upon the principal accumulating after maturity upon any bond should be paid at the time of the payment of the principal of the bond itself in order to satisfy the requirement for payment and discharge of such bond.

Defendant City, as cross-appellant, assigns one error, and this goes to the court's ruling that plaintiff was entitled to receive interest at all upon the principal of the bonds after maturity. Defendant City contends that in view of the statutes, the ordinances and the language of the bonds themselves, interest ceased at maturity. Defendant admits, however, that if the court has correctly determined that interest after maturity on such principal is an obligation to be met from the funds of the district, that it properly disposed of the other question involved therewith, viz., the method and time of payment of such interest.

Incidentally, the city disclaims any interest in this controversy other than as a trustee of the funds so collected from the property owners of the district, and is concerned merely in a fair and equitable solution of the problem in impartial justice to all bondholders and all parties. It concedes that by virtue of defaults in the collection of assessments that the particular district in question will not fully liquidate its paving bond obligations, with the result that some of the higher numbered bonds will suffer the loss.

Counsel for both parties concede that there is considerable if not hopeless con-

flict among the courts upon the questions here presented, and, while urging upon us a full and complete analysis of the decisions of other states and the statutes, ordinances and contracts these courts were endeavoring to interpret, point out that, after all, it becomes rather a matter of adopting the rules. we must apply to our own situation in view of. the language of the controlling paving statutes, the city ordinances enacted in pursuance thereof, and the language of the bonds and the coupons themselves.

We take first that part of the language of the statute in question, viz., sec. 90-1701, Comp.Laws of 1929, pertinent to the issues here presented to find authority for or-·dinances providing for paving under this, the "provisional order" plan. Much is left indefinite and uncertain as to what the interest shall ·be and for what time it shall run, excepting that we do have language clearly limiting the city's right to pay out, fix or assess interest, as to rate and amount. It is provided by said statute after reciting that the governing body of municipalities shall have power to issue "negotiable coupon bonds" in an amount not exceeding the total assessment levied to pay the cost of the improvements, that: "The governing body shall fix the terms and conditions of such bonds providing, however, such bonds shall be made payable out of the moneys collected from said assessments and on or before a date not later than twelve months after the last deferred installment of such assessments is due from said property owners and shall bear

interest *at a rate not exceeding the rate of interest on such deferred installments.*" (Emphasis ours)

There is no detailed statement to be found in the statute, showing what the "negotiable coupon bonds" shall be as to form and substance. We assume and therefore hold that by the term it is meant bonds with coupons attached to the face thereof indicating interest due on the face of the bond. Words and Phrases, First series, Vol. 2, page 1669, Tennessee Bond Cases, 114 U.S. 663, 5 S.Ct. 974, 29 L.Ed. 281. We observe also that a part of Sec. 17 of ordinance 253 would indicate the coupons should be attached to the bonds and the bonds themselves refer to "the annexed coupons."

We next examine portions of the city ordinances applicable to the paving district here involved.

In ordinance No. 275 of Defendant City, passed in pursuance of the above mentioned statutory sanction, we find the authority for the levy of the paving assessment. The Defendant relies strongly upon language found in section 3 of said ordinance whereby it is provided that in making the levy against the property benefited and providing for payment of deferred installments, annually over a period of ten years, to the effect that such deferred assessments bear· "interest in all cases on the unpaid principal of each of such installments *until the maturity thereof,* (emphasis ours) at the rate of six per-cent per annum, payable semi-annually

338

* * *", with a further provision that in case of· default in the payment of any deferred assessment the whole amount shall become due, and during default, and as to the amount in default, this shall bear interest at one per cent per month.

 This court in the case of City of Roswell v. Levers, 38 N.M. 419, 34 P.2d 865, held the one per cent per month provision illegal as being violative of the statute which limits interest upon such liens to 8% per annum. So, the question of more than 8% interest is conceded by counsel to be out, and it is agreed that the city of Albuquerque has at all times and now continues to charge 6%, but no more, upon all paving assessments until paid, whether delinquent or not. It is suggested by Plaintiff and not disputed by Defendant that this practice prevails throughout the state with all municipalities having delinquencies upon like deferred paving assessments. Whether, under like ordinances to the ones here under consideration, more than 6% and not exceeding 8% might properly be charged· against the property owners, was not decided in the Levers case supra. The court there refused to consider that feature of the interest matter upon the grounds it was presented for the first time upon motion for rehearing and that the trial court was not advised of any objection to its fixing the rate at 6%. Such question however, is not here presented.

It must be conceded, as counsel for both parties apparently agree, that the cases presented and relied upon as to both Plain-

tiff and Defendant, particularly as they pertain to interest after maturity on principal, leave the court without much actual aid for the reason that each case rests upon the peculiar and somewhat different statute of each state cited.

Plaintiff and Amici Curiae rely upon the recently decided case of Fooshee, City Treasurer v. Martin, 184 Okl. 554, 88 P. 2d 900, as being sustained by the better reasoning and· sounder principles of law. We feel however, that this case, upon this point, may be distinguished from the one at bar, as the Oklahoma court itself distinguished that case from State ex rel. Moses v. Walters, City Treasurer, 156 Wash. 664, 287 P. 874, upon which ·defendant relies. Speaking of the Wash. case the court in the Fooshee, Treasurer, case supra, says [184 Okl. 554, 88 P.2d 901]: " * . * * The only apparent reason for this holding seems to have been the fact that neither the bonds nor the statute authorizing their issuance provided for the payment of delinquent interest, while in the present case the payment of delinquent interest is specifically prescribed both in the bonds themselves, and in section 6237, supra."

The Oklahoma statute does in fact provide, using the language employed by that court, " * * * Whenever there shall be sufficient funds in the hands of the city or town treasurer after the payment of all interest due and to become due within the next six (6) months, such treasurer shall on September 1st of any year give notice by registered mail * * * that there has

accumulated funds sufficient to pay the designated bonds, and *interest thereon* [emphasis ours] to a date thirty (30) days hence from the date of such notice, and directing the presentation of such bond or bonds for payment and cancellation * * *." 11 Okl.St.Ann. § 151.

With this distinction in mind it is not difficult to reconcile the decision in the Oklahoma case with the theory contended for by defendant, that in the absence of statutory or other authority clearly indicating such intent interest after maturity may not be allowed. So upon this particular point we are afforded but little aid there.

Plaintiff cites and relies likewise upon the case of Miners' and Merchants' Bank v. Herron, 1935, 46 Ariz. 71, 47 P.2d 430, 431. It was there held that the obligation rested upon the county board of supervisors to levy and collect a tax to pay interest upon past due and unredeemed road bonds of the county, in view of language of the particular statute applicable. The statute there provided that it is the duty of the board to annually levy a tax on the property of the county to pay interest "until all of said bonds * * * are redeemed," and not until their maturity merely. The very fact that the levy should continue "until all of said bonds * * * are redeemed" clearly gives added strength to the interpretation adopted.

The Arizona court takes notice of the suggestion that this interest levy provision may be construed as having reference only to call bonds, or the bonds which the county had option to call and pay any time before maturity, but it disposes of the theory in this language: "But we think a more reasonable view is that the lawmakers intended the bonds to draw interest after maturity, at the same rate as before, and until paid. Paragraph 5281 (in lines 1 and 2), in terms, limits its provisions to matured bonds and does not, either directly or inferentially, extend to call bonds of the county."

It seems to us that the significant language of that statute might be sufficient to thus distinguish the Arizona case, as not offering a helpful guide here, although the court there went further, and by its opinion seems to have as well based its decision upon the additional ground that the statutory provision for the cessation of interest after notice to holders of any bonds that "shall mature", was also indicative of a clear intention of the law makers that interest after maturity should be paid. That point presents itself also in the case at bar.

We have in addition the distinction that in the Arizona case the court was dealing with general county obligations and not with special improvement bonds, or particular lien obligations, such as we have presented here. There is, as we have herein otherwise noticed, a difference observed by some courts that marks these special improvement obligations as being subject to a somewhat different rule. "It is well settled that special improvement bonds are

not general obligations of the city, and that their payment is strictly limited to the fund provided by the statutes and the city ordinances adopted thereunder." State ex rel. Griffith v. Shelby et al., 107 Mont. 571, 87 P.2d 183, 185.

Some courts follow the theory that such statutes should be construed in favor of the property upon which the bondholders' resource is founded. See Meyer v. City & County of San Francisco, 150 Cal. 131, 88 P. 722, 10 L.R.A.,N.S., 110; State ex rel. Shaw v. Police Jury of Catahoula Parish, La.App., 167 So. 754.

Nor do we overlook the fact that there is a clear, and probably irreconcilable, conflict of authority upon the general proposition of interest after maturity, as it applies to ordinary bonds and commercial paper generally. See note 27 A.L.R. 83.

██ We have said that "the assessments are the bondholders' only resource" for payment. State ex rel. Ackerman v. City of Carlsbad, 39 N.M. 352, 47 P.2d 865, 868. We said further in that case that there was no debt to be secured and that "the city's only obligation is to handle this fund according to the contract," and that all parties are chargeable with notice of the statutes and ordinances governing.

Many courts hold that the state and its municipalities are not subject to the general rule providing for interest upon indebtedness from its maturity. See Molineux v. State, 109 Cal. 378, 42 P. 34; United States v. North Carolina, 136 U.S. 211, 10 S.Ct. 920, 34 L.Ed. 336; Carr v. State, 127 Ind.

204, 26 N.E. 778, 11 L.R.A. 370, 22 Am.St. Rep. 624.

██ We can and do say following what we conceive to be the better line of reasoning that the statutes, and ordinances enacted in pursuance thereof, are the measure of the bondholders' rights, and likewise limit the property-owners' burden. Authority for imposing the burden of special improvement assessments must be found within the four corners of the legislative acts and the authorized ordinances upon the subject, or within the contract itself which must be clearly authorized at least inferentially, by the statute. Thus we do not restrict our concern to any other rule as it applies to bonds and commercial paper generally. The method set out by statute and ordinance then is exclusive as it provides for procuring money with which to meet the interest coupon and principal. Miners' and Merchants' Bank v. Herron, supra.

Defendant City places much reliance on the case of Meyer v. City and County of San Francisco, 150 Cal. 131, 88 P. 722, 724, 10 L.R.A.,N.S., 110, perhaps a leading case and certainly one often quoted.

It is not difficult, however, likewise to reconcile that case with Plaintiff's contention. There, interest was produced and segregated under a separate levy and for the express purpose of "paying the interest as it matured". We find the California court was faced with the provision that the money thus raised was "to be paid out by said treasurer *only* [emphasis ours] in payment of the coupons attached to said

bonds, as the same from time to time become due."

So it became a very simple matter rendering unnecessary resort to judicial ingenuity to arrive at a fair and reasonable interpretation of what the lawmakers meant when they made provision for such levy and collection and thus clearly limited the payment of interest in that case.

We are also confronted with the recent case of State ex rel. Shaw v. Police Jury of Catahoula Parish, La.App., 167 So. 754, 759, upon which Defendant City places further reliance. But, there we find involved the question of general obligations against the municipality, and in addition, we find one party owning all the bonds where the question of priority of payment could not arise. The court, interpreting a statute somewhat like our own, held that in the absence of a stipulation in the bonds themselves for interest after maturity or of a statute authorizing same, there could be no liability for such interest on the principal indebtedness.

The court there quotes with approval from the Meyer case, supra, and from other authorities in saying: "* * * Where interest is not stipulated for, or authorized by contract or statute, it cannot be awarded against a sovereign government."

We need not and do not question the soundness of such rule. Can we say, however, that there is nothing in the contract in the case at bar authorizing interest after maturity? We think not. We have

the express provision written into the bond itself that it draw interest "from date until payment". The language is not "from date until date *designated* for payment". It is not so difficult to interpret this language as having but one meaning, viz., that interest is payable from the date of the obligation until paid. If there were any limitation imposed by statute or ordinance we might properly arrive at another conclusion in spite of the language of the bond. A like conclusion would follow if statutory authority were lacking to fix terms and conditions of the bonds subject to limitations mentioned in the statute since the city's right to contract is limited by the statute and must appear either expressly or by clear implication.

In the case at bar the bonds themselves provide for the payment on a certain date of the sum of $500 "with interest thereon from date until payment at the rate of six per centum per annum, payable semi-annually * * * both principal and interest being payable in lawful money of the United States of America * * * upon presentation and surrender of this bond, or of the annexed coupons as they severally become due."

In line with what has already been said as to limitation and authorization, can we then find authority in the statutes or in the ordinances enacted pursuant thereto, for the issuance of bonds with interest "from date until payment", or until they be paid?

We may say now that we are not intrigued by the argument, or we might bet-

ter say, by the unurged suggestion, that this language "until payment" has reference only to bonds that are liable to call for payment before their due date, since there is such a call provision, and not to the payment of bonds past due. We hold the language to be plain and to mean what it says and that it is intended that interest run until payment of principal is made.

We are concerned then next with the question of whether there be legal authority for this language of the bonds.

The statute (see 90-1701) is silent as to the specific manner of payment of the bond, principal or interest, providing merely that the governing body of the municipality, "shall fix the terms and conditions of such bonds providing, however, such bonds shall be made payable out of the moneys collected from said assessments and on or before a date not later than twelve months after the last deferred installment of such assessments is due from said property owners and shall bear interest at a rate not exceeding the rate of interest on such deferred installments."

It is clear then the legislature has left to the municipalities the matter of fixing "the terms and conditions of such bonds", with the only limitations being as hereinbefore set out.

We have heretofore said the bond itself spoke an intention that it draw interest "until payment" be made. We now hold that the legislature by the above mentioned statute has given ample authority to the contract making power, the municipality, to provide for interest as it may see fit, within these certain limitations.

Let us next examine the ordinances applicable to determine whether there be anything there to indicate an intention that interest on the bonds run only until maturity. If not, then the city could, of course, contract to pay interest upon such "terms and conditions" as it chooses, and certainly it could contract to pay in the conventional and usual way, that is, with interest burdening the obligation until it be paid.

Ordinance number 275 levied assessments against the property benefited for the purpose of paying the cost of the paving. Sec. 3 thereof provides for the paying of said assessments in deferred installments annually over a period of ten years, with interest at 6% annually until default, when 1% per month would be the rate, as hereinbefore shown.

It is not disputed that the city undertook to levy for interest on assessments that would obligate the taxpayer to pay interest not only at 6% but at an additional rate in the event of and during default. The city had the power to collect, in fact at all times has been and now is collecting from the property owners 6% interest upon all unpaid deferred installments. It seems clear that no limitation fixed by the statute was exceeded when the city contracted to pay interest "until payment" of these bonds. It collects interest at the same rate carried by the bonds from the property owners. The principal

and interest of the bonds are payable from the fund provided therefor, that is, from the "money collected from said assessments" and the bonds "bear interest at a rate not exceeding the rate of interest on such deferred installments". Thus all conditions are fulfilled and no limitation is exceeded. We hold therefore that the principal amount of such bonds bears interest after maturity and that the trial court committed no error in so holding.

Now to examine the statutes and ordinances for authority to pay interest upon interest, or for interest upon past due interest coupons.

We have seen that Section 90-1701, Comp.Laws 1929, is the authority under which these bonds were issued. This section, as we have said, provides that the bonds shall bear interest at a rate "not exceeding the rate of interest on such deferred installments." Section 3 of Ordinance 275 provides for assessments against the property benefited which may be paid in deferred installments, and provides also for interest in all cases upon the unpaid principal of each of said installments until maturity. Thereafter a different rate prevails as to delinquencies. The coupons attached to each bond, omitting the parts nonessential for our purpose, provide:

"No. ――― $15.00

"On the ――― day of ―――, A. D. 19―, the City of Albuquerque, New Mexico, will pay the bearer Fifteen Dollars in lawful money of the United States, with New York Exchange, at the Office of the City Treasurer, out of the Albuquerque Paving Fund, and not otherwise, provided that the bond to which this coupon is attached shall not have been theretofore paid in accordance with the terms thereof, being six months' interest on its Paving Bond dated ―――, 19―.

"―――――――

City Treasurer"

Plaintiff points out that here we have a promise to pay a certain sum on a definite date and reminds us that section 89-103 Comp.Laws 1929, provides that "the rate of interest, in the absence of a written contract fixing a different rate, shall be six per cent. per annum" in certain cases, enumerating among others that of "money due by contract." Plaintiff thus relies upon the general rule that detachable interest coupons having the qualities of commercial paper draw interest when overdue as other money debts, citing 33 C.J. 205.

As we have heretofore said, the particular rule, as it applies to the sovereign state or its subdivisions and particularly as to special revenue bonds in cases of this character, is the one that concerns us here, rather then the rule as it applies to commercial paper generally. The general rule may be of aid only. It cannot be a guide.

The fund provided by the levy and assessment against the property owner is the only resource to which the bondholder may look. It is conceded that the bond and the coupons are silent upon the question of interest upon interest, or of interest

upon these delinquent interest coupons. The limitation and restriction imposed by statute and the assessments provided by ordinance will not permit the payment of interest upon interest, even though the general rule might do so.

It has been held on numerous occasions that interest upon interest coupons is not allowable in the absence of specific agreement or contract to pay. Molineux v. State, 109 Cal. 378, 42 P. 34; Meyer v. City & County of San Francisco, supra; Miners' and Merchants' Bank v. Herron, supra; Thomas v. Henrylyn Irrigation District et al., 79 Colo. 636, 247 P. 1059.

These are cases involving special revenue bonds wherein a different rule than that applying to coupon bonds generally governs. So, whether the better rule upon the question is as above stated, we need not decide in view of our conclusion that it is not allowable. The statute provides that the bonds shall bear interest at a rate "not exceeding the rate of interest upon such deferred installments." It requires that the bonds and all interest shall be paid "from moneys collected from said assessments." Thus with the city collecting only six per cent upon the assessments it is obvious there would be available no funds from which to pay this interest upon interest. It could not have been intended either by the legislature or the city that interest should run without provision being made for funds with which to pay it. No such provision was made. The trial court was correct in holding the interest coupons did not draw interest.

The additional question presented has to do with the method or priority of payment of interest upon the principal bonds after maturity.

Plaintiff calls our attention to Sec. 10 of Ordinance 253 calling for the numerical order payment of bonds, wherein it is provided: "The said paving bonds shall be paid and discharged in numerical order, commencing with number one, and when the city treasurer has funds on hand in said paving fund sufficient to pay the principal of any of said paving bonds, he shall notify the firm of ——— * * * designating the bonds to be paid, and thirty days after said notice is given, the interest on said paving bonds shall cease."

He urges that the use of the term "shall be paid and discharged" in this ordinance indicated payment of the after maturity interest as well as the principal, for otherwise there could be no "discharge" of the bond in the real sense.

We are met with other language in the same ordinance, which requires the treasurer, "when he has funds on hand sufficient to pay the *Principal* (emphasis ours) of any said paving bonds" to give notice as provided, for redemption. The language of the ordinance, defendant claims, does not permit the city Treasurer to wait until he has enough money with which to pay the principal of said paving bonds, "together with accrued interest, including interest after maturity", if he were otherwise so entitled. He is directed to act, defendant points out, when the principal

only can be met from the accumulated fund and when, by his notice to the holder, the running of interest must cease. So thus recognizing the conflict which a strict interpretation of the ordinance by this language presents, we must look to the intention of the ordinance making power and the contracting parties, as this may be gathered from the statutes, the ordinances, and the provisions of the bonds themselves. It will be of aid also to examine other cases upon the subject and in point. Only three such cases have been called to our attention; one each from the states of Montana, Washington, and Oklahoma.

In the case of State ex rel. Griffith v. City of Shelby, 107 Mont. 571, 87 P.2d 183, 184, the court was dealing with a statute and a case much like our own and the holding was against the contention plaintiff here maintains. The Montana statute (Sec. 5249, Revised Codes) provided that the city treasurer should, before redeeming said bonds or paying the principal thereof, first pay out of the specific improvement district fund "the interest on all outstanding bonds, and to apply any balance remaining to the payment of the principal and the redemption of the bonds in the order of their registration."

The sole question there was that of priority of payment as between the bonds in question and the accrued interest on all outstanding bonds of the issue. The court held that the principal of the bonds in question was entitled to payment in preference to interest after maturity upon any of the bonds. The question of whether the bonds in fact bore interest after maturity, for the purpose of that case, was conceded though not decided. Counsel for Plaintiff concedes this case to be against him and does not criticize it as not logical or substantially directly in point, though he does favor the logic of the dissenting opinion in the other case, upon which defendant relies, viz., State ex rel. Moses v. Walters, etc., Wash., supra.

In the Walters case it was likewise held in a situation much like the one here presented that principal of local improvement bonds after payment of all interest evidenced by coupons had preference of payment in numerical order over further accruing, or after maturity, interest.

As in the Montana case, the court here likewise found it unnecessary to pass upon the question of whether the bonds bear interest other than as interest is evidenced by coupons; that is, whether they bear interest after maturity.

There the court was dealing with a statute quite fully implemented with regulatory measures and containing provisions quite, but not exactly, like the ordinance provisions here under consideration. For example: The Washington statute provided that the city Treasurer, whenever there shall be sufficient money in the fund "to pay the *Principal* (emphasis ours) of one or more bonds", he "shall call in and pay such bonds" in their numerical order. The court there was faced with a further provision in the statute to the effect that when there be sufficient money in any local im-

provement fund "over and above sufficient for the payment of interest on *all unpaid bonds*" (emphasis ours) the same shall be applied on the principal of the senior outstanding bonds in their numerical order. It, apparently, had no difficulty in arriving at the conclusion that the term "interest on all unpaid bonds" had reference only to the regular interest represented by interest coupons, but it appears to us this conclusion is not supported by exactly clear reasoning.

The remaining one of the three cases in point called to our attention by counsel is that of Fooshee, City Treasurer v. Martin, supra, which has already been referred to and discussed under another point. Counsel for the Defendant suggests that this case should be distinguished as being based upon a different condition than that to which our own situation confines us. He does not point out the distinction however, and we can find none which we can say may have influenced the decision upon this point. We must and do assume that this case simply holds contrary to the other two just discussed and upon a like question, uninfluenced by any marked statutory or factual differences. This case, like the Walters case, supra, was not unanimous, two of the justices dissenting.

The Montana statute Rev.Codes 1935, § 5249, required that the bonds "shall bear interest at the rate of six per cent. per annum, from the date of registration until called for redemption or paid in full" and that the principal bonds should await payment and redemption until there has been paid "the interest on all outstanding * * * bonds, *on presentation of the coupons belonging thereto* [emphasis ours], and any funds remaining shall be applied to the payment of the principal and the redemption of the * * * bonds in the order of their registration * * *".

Yet, the court in the City of Shelby case, supra, arrived at the conclusion that all interest accruing after maturity upon the principal bonds should be paid, if at all, only after the payment and redemption of all principal bonds. The question of whether interest accrues upon these special improvement bonds after maturity was not decided.

It may be that the language of the Montana statute hereinbefore quoted could be more easily appraised as supporting such reason and construction than could the language of our ordinances and the contract.

Plaintiff says that to carry the case of State ex rel. Ackerman, supra, to its logical conclusion, we should hold that after maturity interest should be paid at the same time the bonds are to be paid and discharged.

Counsel have presented us with none other than these three above mentioned cases, which they must concede to be at least substantially in point upon the question now under discussion.

The bonds cannot be "paid and discharged" as required until the accumulated interest, whether represented by

coupons or otherwise, has been paid. Otherwise there is no final "discharge" of the obligation. As a practical matter, the holder of a bond called for redemption might, we may say, quite naturally not want to deliver his bond for payment and discharge until the city would be able to actually pay and discharge it in full. The city, as well, would not want to pay the principal on the bond and yet have the bondholder keep his evidence of the full indebtedness until such a time as the additional interest after maturity to which the bondholder would be entitled, could be paid by the city, if ever. It is suggested that the bond could be surrendered and a receipt taken by the holder showing there is yet due after maturity interest from the city. But could the bondholder be required to surrender this security which the law has given him as evidence of the debt owed, and which we know he *may* retain until it be "paid and discharged"? We think not.

The problem suggested by defendant as heretofore pointed out, which is presented by the language of Sec. 10 of the ordinance which provides that the city treasurer shall make designation and give notification when he has on hand sufficient funds "to pay the principal of any of said paving bonds," is not a difficult one when viewed in the light of reason and the ordinance and contract as a whole. Moreover, this question was discussed in the case of State ex rel. Ackerman v. Carlsbad, 39 N.M. 352, 47 P.2d 865, and there the identical language found in section 10 of the ordinance here under consideration was considered in a like paving ordinance and its meaning declared contrary to defendant's contention. We said "literally that condition is fulfilled if the fund contains $500 plus the amount of accrued interest on that sum."

It follows from what has been said that the learned trial judge was in error in holding that such after maturity interest is payable only after interest coupons and the principal on all bonds have first been paid. Accordingly, the cause is reversed and remanded with directions to the trial court to vacate and set aside its former judgment in so far as it is in conflict with this opinion and to make and enter a new judgment in conformity herewith.

It is so ordered.

BICKLEY, C. J., SADLER, J., and IRWIN S. MOISE, District Judge, concur.

In the absence of Honorable GEORGE W. HAY, District, Judge, who participated in this decision, we are authorized to announce that he concurs in the views herein expressed.