[No. 10485. Department Two. April 28, 1913.]

NORTH COAST RAILROAD COMPANY, *Respondent*, v. JESSIE GENTRY *et al.*, *Appellants.*[1]

EMINENT DOMAIN—CONDEMNATION—WHEN TITLE PASSES—TAXES PENDING APPEAL—LIABILITY FOR TAXES—STATUTES—CONFLICTS. Taxes which became a lien upon condemned property after entry of the judgment of appropriation, pending an appeal from the award of damages and a retrial as to the damages, must be paid by the appropriator as the party in whom the title was vested when the tax lien attached, where such party paid the second award; notwithstanding pending appeal it had withdrawn from the registry of the court the amount deposited to satisfy the first award and had given no bond and had not taken possession of the land; in view of Rem. & Bal. Code, § 927, providing that, at the time of rendering judgment for damages, if the damages are then paid, or upon their payment, the court shall enter a judgment of appropriation of the land "thereby vesting the legal title to the same in the corporation seeking to appropriate such land," and Id., § 929, providing for the payment of the damages by depositing the award in court, there to remain in case of appeal, and Id., § 931, providing that the appeal shall

[1]Reported in 131 Pac. 856.

only bring up for review the justness and propriety of the award, and Id., § 932, providing that the appropriator may use the property pending appeal upon giving a bond; since the title was vested by the decree of appropriation under § 927, there was no authority for withdrawal of the deposit pending appeal under § 929, and the failure to give bond under § 932 could not affect the title, which could only be divested by abandonment of the proceedings, payment of costs and withdrawal of the deposit; the inference from the provision of § 929 requiring that the deposit remain in the registry of the court pending appeal being that the appeal suspends the right of abandonment until the appeal is determined.

Appeal from an order of the superior court for Spokane county, Kennan, J., entered December 7, 1911, in favor of the plaintiffs, requiring the payment of money into court to liquidate taxes accruing pending a new trial on the issue of damages in a condemnation proceeding. Reversed.

*Merritt, Oswald & Merritt*, for appellants.

*W. W. Cotton* and *Hamblen & Gilbert*, for respondent.

ELLIS, J.—The respondent commenced this action on December 23, 1908, to condemn certain real estate situated in the city of Spokane, the legal title to which was at that time in the Northwestern & Pacific Hypotheek Bank. The appellants held a contract to purchase the property, upon which there was a balance owing to the bank. The order of public use and necessity was regularly entered, and in March, 1909, the cause was tried to a jury, which returned a verdict assessing the damages at $85,000. Thereupon, the respondent paid to the clerk of the court the sum of $85,111.05, covering the award and costs, and procured the entry of a decree and judgment for the amount of the verdict and $111.05 costs, and decreeing that the land described "be and the same is hereby appropriated to the use of the petitioner, the North Coast Railroad Company, a corporation, and the legal title is hereby vested in said corporation." The appellants here, as defendants in the original action, appealed from the award made in the original decree. This court reversed that judgment, and remanded the cause for a new trial upon the issue

of damages. *North Coast R. Co. v. Gentry*, 58 Wash. 82, 107 Pac. 1060. After the appellants had given notice of that appeal, the respondent withdrew the amount so deposited, less the costs. There is nothing in the record to indicate that the appellants had notice of, knew of, or in any manner acquiesced in the withdrawal of this money from the registry of the court. Pending that appeal, the appellants completed payment for the land and received a deed from the bank, so that the appellants alone are now interested. Pending that appeal, the respondent did not enter into any bond to obtain possession of the property as provided by Rem. & Bal. Code, § 932, and during that appeal and until the entering of a second judgment, the appellants, so far as the record shows, remained in possession of the property.

In October, 1910, a second trial was had on the issue of damages, in which the jury assessed the damages at $96,-868.75. A judgment and final decree of condemnation was entered on November 18, 1910, and on the same day the full amount of that judgment and costs, amounting to $97,192.25, was paid into court by the respondent, and was by the clerk of court paid over to the appellants' attorneys, and the second judgment was satisfied of record. Between the first and second trials, general taxes for the year 1909 accrued and became a lien against the property in the sum of $597.72, with interest thereon at the rate of fifteen per cent per annum from June 1, 1910. On May 26, 1911, respondent filed a petition setting up the foregoing facts, except that it made no reference to the first trial or the payment of the amount of the judgment therein to the clerk, nor its withdrawal by the respondent. The petition prayed for an order requiring the appellants to answer and show cause why they should not be required to pay into the registry of the court a sum sufficient to liquidate these taxes, and that upon final hearing an order be made to that effect, and for general relief. The appellants appeared and filed an affidavit setting forth the facts substantially as above stated, which affidavit was not contro-

verted by the respondent.  A hearing was had upon the petition and affidavit, and the court, on December 7, 1911, entered an order requiring the appellants to pay the clerk the sum of $592.72, with interest from June 1, 1910, at the rate of fifteen per cent.  This appeal is from that order.

Both parties concede that the taxes must be paid by the party in whom the title was when the lien of the taxes attached.  The appellants contend that the first decree of appropriation vested the legal title of the real estate in the respondent for corporate purposes; that by the appeal the propriety and justness of the amount of damages was the sole question in issue; that respondent had no right to withdraw the money paid to the clerk; and that its withdrawal in no manner divested the title acquired by the first decree.  The respondent makes the counter contention that the condemnation could have been abandoned at any time prior to the entry of the last judgment and payment of damages thereby awarded to the parties entitled thereto, and that, therefore, no title passed by the first decree of appropriation.

The exact question here presented has never been determined by this court.  It must be solved by reference to the statute governing the exercise of the right of eminent domain. That statute (we cite Rem. & Bal. Code by section number), so far as here material, is as follows:

"Sec. 927.  At the time of rendering judgment for damages, whether upon default or trial, if the damages awarded be then paid, or upon their payment, if not paid at the time of rendering such judgment, the court, or judge thereof, shall also enter a judgment or decree of appropriation of the land, real estate, premises, right of way, or other property sought to be appropriated, thereby vesting the legal title to the same in the corporation seeking to appropriate such land, real estate, premises, right of way, or other property for corporate purposes."

Section 929, after providing that, upon the entry of the judgment, the condemner may pay the damages assessed and costs by depositing the same with the clerk of the superior

court, to be paid out under the direction of the court, or judge thereof, and declaring that upon such payment into court the condemner shall be relieved and discharged from all liability for the land or property taken, unless upon appeal a larger amount of damages be recovered, continues:

"And in that case, only for the amount in excess of the sum paid into said court, and the costs of appeal; *Provided*, that in case of an appeal to the supreme court of the state by any party to the proceedings, the money so paid into the superior court by such corporation as aforesaid shall remain in the custody of such court until the final determination of the proceedings by the said supreme court."

Section 931 gives a right of appeal from the judgment for damages, declares that "such appeal shall bring before the supreme court the propriety and justness of the amount of damages," and provides that no bond shall be required of the person interested in the property sought to be appropriated; but that if the condemner is appellant, it shall give a bond like that prescribed in the following section. The next section is as follows:

"Sec. 932. The construction of any railway surface tramway, elevated cable tramway, or canal, or the prosecution of any works or improvements by any corporation as aforesaid shall not be hindered, delayed or prevented by the prosecution of the appeal of any party to the proceedings: *Provided*, the corporation aforesaid shall execute and file with the clerk of the court in which the appeal is pending a bond to be approved by said clerk, with sufficient sureties, conditioned that the persons executing the same shall pay whatever amount may be required by the judgment of the court therein, and abide any rule or order of the court in relation to the matter in controversy."

The respondent paid into court the amount of the original judgment and costs and procured a decree of appropriation. Under the positive terms of the statute (§ 927), it thereby became vested with the legal title for its corporate purposes. The language can mean nothing else. It is too plain for construction. The appeal from the award did not *ipso facto*

divest that title, since, under § 929, the money paid into court could not be withdrawn pending the appeal, and under § 931, the only thing reviewable upon the appeal was the propriety and justness of the amount of damages. Neither of these sections implies a divesting of the title, but rather the converse, since by the first the money paid is retained for distribution, and by the second the condemner is relieved from further liability to the condemnee on account of the property, except for any increase of damages recovered by reason of the appeal and the costs. That the title is not divested by the appeal is made plain by the next section, which we have quoted in full, § 932. By giving the bond therein required conditioned for the payment of any judgment rendered in the appellate court, or any order of that court in relation to the matter in controversy, the condemner may take possession of the property and use it for corporate purposes pending the appeal. There is no intimation that this bond vests the title. It merely makes the title, already vested by the decree of appropriation and payment in compliance with § 927, available in possession. Where the appeal is by the condemnee and possession is not taken by the condemner under its title, the possession by the condemnee, so long as the money paid remains in court, is sufficient security for the payment of any added recovery or the performance of any order in his favor resulting from the appeal. It is plain, therefore, that the title, which vested in the respondent by the original decree of appropriation and payment of the original award, could be divested, if at all, in the absence of a reconveyance, only by an abandonment of the condemnation. The general rule as to the right of abandonment, in the absence of statutory obstacles, is unquestionably that stated in Lewis, Eminent Domain (3d ed.), § 955, as follows:

"The weight of authority undoubtedly is that, in the absence of statutory provisions on the question, the effect of proceedings for condemnation is simply to fix the price at which the party condemning can take the property sought,

and that even after confirmation or judgment the purpose of taking the property may be abandoned without incurring any liability to pay the damages awarded."

Our statute does not in express terms define or fix the limits of the right of abandonment, but in the main leaves the question open to be decided upon general principles. There is, however, one provision of the statute which by necessary implication limits the right of abandonment. Section 929 provides that, in case of appeal, the money which has been paid into the superior court shall remain in court until final determination of the appeal. The plain inference is that the payment of the money suspends the right of abandonment pending the appeal. The respondent's withdrawal of the money was in direct violation of the terms of this section. It did not, and could not, operate as an abandonment. The money remains in court as earnest that the condemnation will not be abandoned pending the appeal. By its deposit there was an election to take and retain, pending the appeal, the title vested by the terms of § 927. Under a similar provision in a statute of Nebraska, which did not undertake to declare when rights should become vested, as ours does, the supreme court of that state held that a condemning railroad company could not, after an appeal to the district court and judgment upon an award of the commissioner appointed to assess the damages, abandon the location and avoid payment. *Drath v. Burlington & M. R. Co.*, 15 Neb. 367, 18 N. W. 717.

If in the case before us, on the original appeal there had been an affirmance of the original judgment for damages, the right of abandonment so suspended by payment of the award into court would have been forever lost, and the respondent's title would have related to the date of the original judgment and decree of appropriation, not to the date of affirmance. Without doubt the respondent would have then taken the land subject to the taxes which accrued pending the appeal. In such a case, it would be absurd to say that it could charge these taxes against the appellants, or against the fund in

court representing the value of the land, merely because it
did not see fit to take possession and give the statutory bond
to pay any additional damages that might have been awarded
by reason of the appeal. It may be that the respondent, on
reversal of the original judgment, might have abandoned the
condemnation and then withdrawn the money paid less the
costs, without entering upon a new trial to assess the damages,
and it may be that, even after entering upon a new trial and
the rendition of an increased award therein, it might still
have abandoned the proceedings, withdrawn the original pay-
ment, and refused to pay the additional award, since the statu-
tory inhibition against such withdrawal is only pending the
appeal. And again it may be that, by pursuing either of
these courses, the respondent could have divested itself of the
title and burdens of ownership. But it is not necessary to
decide, and we do not decide, either of these questions, since
the respondent did neither of these things. On the contrary,
it entered upon the new trial, it paid the additional award,
it did not attempt to abandon the proceeding. It cannot
now claim that the legal title, which became vested in it by
the first decree of appropriation and payment of the first
award, as declared by the statute, was ever divested by a
potential right of abandonment which was never asserted.
The entry of a second decree of appropriation was an idle
thing. The title had vested by the first decree. The only
issue involved in the appeal was "the propriety and justness
of the amount of damages." The cause was remanded for
a retrial of that simple issue. While the retrial is a trial
*de novo*, it is confined to that single issue. Meanwhile, fail-
ing a bond, the appellants, though divested of the legal title,
retained possession as security for any added award.

The cases cited by the respondent are not pertinent. In
*Seavey v. Seattle*, 17 Wash. 361, 49 Pac. 517, the appeal
was by the city from a judgment entered at the instance of
the landowner. The award could only be paid by assess-
ments against the property benefited. No money had been

paid into court. No title was vested in the city. There had been an actual abandonment of the condemnation. In *Port Angeles Pac. R. Co. v. Cooke*, 38 Wash. 184, 80 Pac. 305, no money was paid into court, no decree of appropriation had been entered, no title had vested in the condemner. That there had been an actual abandonment was not controverted. In *North Coast R. Co. v. Hess*, 56 Wash. 335, 105 Pac. 853, a materialman's lien was filed after the suit in condemnation was brought. The lien claimant was not a party to the proceeding. The materialman had contributed a part of the *res* condemned. His materials had become a part of the value of the entire property found in the award. When that award was paid into court, the lien, of course, followed the fund. Moreover, and the distinction is vital both in law and equity, the lien in equity related back to the furnishing of the materials and antedated the passing of title by decree of appropriation and payment of the award. The decision would have been different had the materials been furnished and the lien filed after the decree of appropriation and payment. Here the taxes accrued and became a lien almost a year after the title had passed.

The order appealed from is reversed.

MOUNT, FULLERTON, MAIN, and MORRIS, JJ., concur.