[No. 13366.   Department One.   January 2, 1917.]

THE STATE OF WASHINGTON, *on the Relation of H. W. Peel et al., Plaintiff*, v. C. W. CLAUSEN, *as State Auditor, Respondent*.[1]

EMINENT DOMAIN — COMPENSATION — APPORTIONMENT BETWEEN MORTGAGOR AND MORTGAGEE.  Where the state condemned land for a state road, without making the mortgagees parties as it might have done, and an award was entered in favor of the owners, the state must pay the award to the owners before taking possession, notwithstanding the fact that the mortgagee had purchased at a subsequent foreclosure sale and had quitclaimed to the state, subject to redemption; since the award, unappealed from, is conclusive on the subject of title, as between the parties, and the question of apportionment between mortgagor and mortgagee is immaterial.

SAME—PAYMENT OF COMPENSATION—PROCEEDINGS—STATUTES—LIABILITY OF STATE ON TAKING POSSESSION.  Rem. Code, § 900, providing that in eminent domain proceedings the attorney general "shall" file with the state auditor a certificate setting forth the amount of the award against the state, and making it the duty of the auditor to draw a warrant therefor, leaves it discretionary with the attorney general to file the certificate, as the state may abandon the proceedings before taking possession if the award is unsatisfactory; hence § 900 does not conflict with the earlier act, Id., § 889, providing that no execution shall issue against the state on any judgment.

SAME—PAYMENT OF COMPENSATION—PROCEEDINGS—PARTIES.  The state having taken possession of lands before paying the award, and refused to avail itself of Rem. Code, § 900, authorizing an abandonment of the proceedings, it cannot escape liability for the amount of the award, and the attorney general is therefore not a necessary party to a proceeding to compel the state auditor to issue a warrant for the amount due, which under § 900 he was to issue upon the attorney general's certificate.

SAME—PROCEEDINGS—PLEADING AND PROOF.  Where the state took possession of condemned lands before paying the award, in violation of Const., art. 1, § 16, requiring compensation to be first made, the law presumes that the state is prepared to pay the award, and the burden is not upon the claimant to allege or prove the state of the public fund.

STATES—FUNDS—APPROPRIATIONS—FORM.  Neither Const., art. 8, § 4, providing that no money shall be paid out of the treasury except

[1]Reported in 162 Pac. 1.

in pursuance of an appropriation by law, nor Rem. Code, § 9008, prohibiting the state auditor from issuing any state warrant unless there is a law authorizing the issue of the same, requires that an appropriation of moneys shall be in any particular form of words, but the same may be made by a general act clearly showing the legislative intent.

EMINENT DOMAIN—PAYMENT OF COMPENSATION—APPROPRIATION—NECESSITY—STATUTES. A specific appropriation by the legislature to pay awards in condemnation proceedings is not contemplated or necessary to authorize the state auditor to issue a warrant therefor, under the eminent domain act of 1891, entitled an act to regulate the mode of appropriating land and prescribing the method of making compensation, which provides (Rem. Code, §§ 896, 897) that the decree of appropriation shall vest legal title in the state, that the decree shall be recorded and that the state may make payment of the damages by depositing the same in court; especially in view of. Id., § 900, providing for the payment of awards by the issuance of state warrants; since it is no defense to an action to secure a warrant that a special fund provided for the payment of awards had been exhausted.

SAME—COMPENSATION—PAYMENT—STATUTES. Rem. Code, § 5872, providing that the cost of a right of way for a state road acquired by the highway commission shall be paid for from the fund apportioned to such state road does not make that method exclusive, or repeal the provisions of the general eminent domain act which applies where the road fund has been exhausted and the state had taken possession of land and put it to a public use without making compensation.

Application filed in the supreme court March 6, 1916, to compel the state auditor to issue a warrant in payment of an award in proceedings to condemn a right of way for a state road. Granted.

*H. W. Canfield* and *Troy & Sturdevant*, for relators.

*The Attorney General* and *R. E. Campbell, Assistant,* for respondent.

CHADWICK, J.—The state, in the prosecution of its highway extensions, brought suit against the relators to condemn a right of way over certain lands owned by them in Spokane county. A jury returned a verdict in favor of relators for the sum of $1,026, and costs taxed at $125.40. Prior to the

time the judgment was entered, the Pennsylvania Mortgage Company had brought a proceeding to foreclose a mortgage upon relators' lands and had caused the lands to be sold at sheriff's sale to satisfy the decree. The company became the purchaser at the sale, and now holds the legal title subject to redemption.

Pending the entry of the judgment in the eminent domain proceedings, an agent of the state had obtained a quitclaim deed from the mortgage company for the right of way. This deed is held in escrow pending a possible redemption. After the entry of the judgment in favor of the relators, the state took possession of the right of way and has cleared, graded, and graveled and is maintaining a roadway upon it. The state has not paid the amount of the judgment and costs into court, or any part thereof, although repeatedly requested so to do. Relators have brought this proceeding to compel the issuance of a warrant in payment of the judgment. Respondent has demurred to the petition, setting up the several legal defenses that relators have no interest in the subject-matter, that there is a defect of parties defendant, and that there is no allegation in the petition showing that there is a fund upon which the warrant can be drawn and out of which it can be paid.

I. *Interest in the subject-matter.* The objection that the mortgagee is the owner of the land, and entitled to the award as against relators, or that the state is not bound by the judgment on account of the deed, is not tenable. The *Attorney General* supports his contention by reference to § 602 of the code, and the following cases: *Hardy v. Herriott,* 11 Wash. 460, 39 Pac. 958; *Dane v. Daniel,* 23 Wash. 379, 63 Pac. 268; *McManus v. Morgan,* 38 Wash. 528, 80 Pac. 786; *Merz v. Mehner,* 67 Wash. 135, 120 Pac. 893.

As between the mortgagor and the mortgagee holding subject to redemption, the question of ownership may be material and should be determined when the fund paid for the taking of the property is distributed, but a judgment debtor

cannot question, in a collateral way, a judgment once entered in favor of a particular party and not appealed from.

The state has had the value of the land taken assessed by a jury, and it is bound to pay that value, unless the payment is waived by those who are entitled to it. The apportionment of the fund between the relators and the mortgagee is a matter of no interest to the state. Neither is it sufficient to say that, if there is no redemption, the state can take the deed from the mortgage company and permit the judgment to go unsatisfied. It being the duty of the state, under the constitution, to pay the award, the mortgagee could not, under the record, disclaim the award if it would. Nor can the state now deal with the mortgagee as the owner. It brought its action against relators alone, and had a judgment entered in their favor. The mortgage company had notice of the eminent domain proceeding, and the state had notice of the mortgage. It does not appear that the state tendered any issue as to ownership; nor was an appeal taken from the judgment. The state could have purged itself of all questions of ownership and distribution of the award by doing what the statute requires, that is, by making the mortgagee a party or by paying the award into court, at the same time calling the attention of the court to the state of the title and the necessity of an order distributing the fund.

The cases of *North Coast R. Co. v. Hess*, 56 Wash. 335, 105 Pac. 853, *Carton v. Seattle*, 66 Wash. 447, 120 Pac. 111, and *State ex rel. Long v. Superior Court*, 80 Wash. 417, 141 Pac. 906, do not bear in favor of respondent. On the contrary, they hold, in so far as they bear at all, that a petitioner in a condemnation proceeding can, by following the statute, take the land without assuming the burden of distributing the fund. But, inasmuch as the state has paid nothing into court, and there is no showing that the mortgagee is claiming any part of the award as against the judgment creditors, it is idle to further discuss this phase of the case.

II. *Defect of parties.* Relators rely upon Rem. Code, § 889:

"No execution shall issue against the state on any judgment, but whenever a final judgment against the state shall have been obtained in any such action, the clerk shall make and furnish to the auditor of state a duly certified transcript of such judgment; and the auditor of state shall thereupon audit the amount of damages and costs therein awarded, and the same shall be paid out of the state treasury." [L. '95, p. 188, § 4.]

The *Attorney General* relies upon the eminent domain statute, Rem. Code, §§ 891-900, wherein it is provided that, after an award is made, the *Attorney General* shall file a certificate with the auditor. Section 900 follows:

"Whenever the attorney general shall file with the auditor of this state a certificate setting forth the amount of any award found against the state of Washington under the provisions of this act, together with the costs of said proceeding, and a description of the lands and premises sought to be appropriated and acquired, and the title of the action or proceeding in which said award is rendered, it shall be the duty of the state auditor to forthwith issue a warrant upon the state treasury to the order of the attorney general in a sum sufficient to make payment in money of said award and the costs of said proceeding, and thereupon it shall be the duty of said attorney general to forthwith pay to the clerk of said court in money the amount of said award and costs." [L. '91, p. 143, § 10.]

It is contended that the *Attorney General* is a necessary party.

At the argument, we were inclined to the belief that there might be some conflict between §§ 889 and 900. After a more careful consideration, we find no conflict. Each has its place. The application of either will depend upon the record. Art. 1, § 16 of the constitution provides that land shall not be appropriated to a public use unless its value is first ascertained and paid into court for the owner. We have held that a condemner, if dissatisfied with the award, is not bound to

pay the judgment and take the property. *Port Angeles Pac. R. Co. v. Cooke*, 38 Wash. 184, 80 Pac. 305; *State ex rel. Struntz v. Spokane County*, 85 Wash. 187, 147 Pac. 879; Lewis, Eminent Domain, § 955; 1 Elliott, Roads & Streets, § 307.

The holding that title would not pass until the award had been paid into court in satisfaction of the judgment, followed. *North Coast R. Co. v. Gentry*, 73 Wash. 188, 131 Pac. 856; *Port of Seattle v. Yesler Estate*, 83 Wash. 166, 145 Pac. 209. Section 900 means no more than that the claimant in a condemnation proceeding can assert no rights in the judgment. His right of payment, as well as the right of the state to take possession of the land for public uses, is made dependent upon the certificate of the *Attorney General*. The act of the *Attorney General*, notwithstanding the use of the word "shall," is one of discretion. If the award is not satisfactory, the state can abandon the proceeding. If it is satisfactory, the *Attorney General* can file his certificate, whereupon a warrant is drawn to his order and, upon the payment of the judgment, title will pass.

But the state is in no position to invoke this statute. It has ignored the privileges of the chapter upon which it relies, and, by taking actual possession of the right of way in defiance of the constitution, has made itself subject to the money judgment which was entered against it in the original case. The purpose of § 900 was to permit the state to repudiate a judgment in a condemnation proceeding. Having taken the land, it has waived the right to repudiate, and is, in law, charged with its value.

In the interest of public policy, this court has held that the state or a municipal corporation, or a corporation exercising the privileges of the sovereignty, will not be ousted if it has wrongfully taken possession of the land and is, in fact, devoting it to a public use. The owner will be left to his remedy at law to recover damages. The cases are collected in *Domrese v. Roslyn*, 89 Wash. 106, 154 Pac. 140. The corol-

lary of the cases cited should be equally well settled in principle; that is, if a petitioner has determined the value of the land prior to the time possession is taken, it cannot find protection by urging the omission of some duty imposed upon it by the eminent domain statutes, but must answer the money demand of the judgment.

III.   *The burden of pleading and proving a solvent fund.*

The burden is not upon relators to plead the state of the public fund.   The state, through its officers, has taken relators' property and put it to a public use in defiance of the constitutional limitations upon its power to take without first making just compensation.   Const., art. 1, § 16.   Having failed in its duty to the citizen, the law will presume that it is prepared to pay the value of the property taken, when called upon to do so.   So much for the pleading.

We announced our decision in this case some time ago.   We directed that the writ should issue.   Whereupon—notwithstanding a stipulation theretofore entered into by counsel that, in the event the demurrer should be overruled and the writ issued, it should direct the respondent to pay the money into the registry of the superior court of Spokane county to be paid out under the order of that court—counsel for respondent came in and announced that the special fund (provided for the highway, which is laid in part over relators' land) had been exhausted and paid out by respondent pending a hearing upon relators' petition; that there is no contingent appropriation out of the general fund for the payment of judgments against the state; that, in the absence of such appropriation, respondent cannot issue a warrant against the general fund without violating the provisions of art. 8, § 4, of the constitution:

"No money shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within two years from the first day of May next after the passage of such appropriation act, and every such law making a new appropriation, or

continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum;"

and Rem. Code, § 9008, which provides:

"The state auditor shall, in no case issue any state warrant unless there is a law authorizing the issue of the same, and every warrant shall state the act under which it is drawn; and if any state auditor shall issue any state warrant not authorized by law, he shall forfeit and pay fourfold the amount of such order to the state to be recovered by action against the auditor and his sureties on his official bond."

But we think that relators are not to be denied their remedy because of the unlawful appropriation of their land, or the defiant waste of any part of the highway fund.

The object of the constitution art. 8, § 4, and the statute cited, is to prevent expenditures of the public funds at the will of those who have them in charge, and without legislative direction.

"Its object is to secure to the legislative department of the government the exclusive power of deciding how, when, and for what purposes the public funds shall be applied in carrying on the government (2 Opinions Attorneys-General, 670). It had its origin in Parliament in the seventeenth century, when the people of Great Britain, to provide against the abuse by the king and his officers of the discretionary money power with which they were vested, demanded that the public funds should not be drawn from the treasury except in accordance with express appropriations therefor made by Parliament." *Humbert v. Dunn*, 84 Cal. 57, 24 Pac. 111.

It is well understood that these provisions—and they are common to most, if not all, of our written constitutions—are mandatory, and that no moneys can be paid out without the sanction of the legislative body. The legislative intent must be certain. It is not to be disclosed by a construction of doubtful acts or ambiguous language. But it does not follow that an appropriation need be in any particular form or words.

"It is sufficient if the legislative intent to make an appropriation clearly appears, expressly or by implication, from the terms of the statute." 36 Cyc. 892.

So it is held, where a law creates an office, no special appropriation is necessary to authorize the issuance of a warrant for the payment of a salary fixed by the terms of the act. This very question was before the court in *State ex rel. Brainerd v. Grimes*, 7 Wash. 191, 34 Pac. 833. The legislature had created an office, fixed a salary, and provided that it should be paid monthly, the same as the salaries and expenses of the other state officers are paid, and directed the auditor,

". . . to issue his warrants for . . . the payment of the salaries of the members of the said board; and the treasurer of state is hereby directed to pay the same out of any moneys in the state treasury not otherwise appropriated."

The officer brought mandamus to compel the issuance of a warrant for his monthly salary. The auditor defended, setting up that no appropriation had been made, as in fact, none had been made, either by special or general appropriation bill. The respondent relied, as here, upon art. 8, § 4, of the constitution. The court held:

"It is evident that the legislature construed the act under consideration as embodying an appropriation for the purpose of carrying the act into effect, for the bill is entitled 'An act to provide for the creation of a state board of land commissioners for the management and disposition of the public lands of the state, making appropriations therefor, and declaring an emergency.' But, outside of any light which may be thrown upon the intention of the law-makers by aid of the title, we are clearly of the opinion that the language employed in the body of the act is amply sufficient to show that the intention of the legislature was to appropriate. They have designated the amount, and have directed that it be paid out of any moneys in the state treasury not otherwise appropriated. This, we think, is sufficient, and the appropriation contemplated by the constitution is as plainly indicated as though the formal words 'there is hereby appropriated' etc.,

were used. No arbitrary form of expression is dictated by the constitution, and none should be required. Many cases have been adjudicated in states having substantially the same constitutional provision as the one in question, and so far as we have been able to ascertain they have uniformly been determined in favor of the relator's contention. See *State of Louisiana v. Bordelon*, 6 La. Ann. 68; *Humbert v. Dunn*, 84 Cal. 59, 24 Pac. 111, and cases cited."

See, also, *Carr v. State ex rel. Coetlosquet*, 127 Ind. 204, 26 N. E. 778, 11 L. R. A. 370; Id., 22 Am. St. 624, where many authorities are collected.

It was held in *Campbell v. Board Com'rs of State Soldiers' & Sailors' Monument*, 115 Ind. 591, 18 N. E. 33:

"There may be an appropriation of public moneys to a given purpose without in any manner designating the act as an appropriation."

The legislature, by the act of 1891, recognized the necessity of taking private property for public use by the state, and without those delays that might attend such proceedings if no way to meet the award were presently provided. It therefore undertook to devise a prompt and efficient procedure—a law that would not delay the state in its purposes and, at the same time, afford full protection to the property owner in the right guaranteed by the constitution, that is, that his property should not be taken without just compensation paid to him, or into the registry of the court, for his use. The act is a part of chapter V, Rem. Code. It is there provided:

"At the time of rendering judgment for damages, whether upon default or trial, the court or judge thereof shall also enter a judgment or decree of appropriation of the land, real estate, or premises sought to be appropriated, thereby vesting the legal title to the same in the state of Washington. Whenever said judgment or decree of appropriation is made, a certified copy of such judgment or decree of appropriation may be filed for record in the office of the auditor of the county where the said land, real estate, or other prem-

ises are situated, and shall be recorded by said auditor like a deed of real estate, and with like effect." Rem. Code, § 896.

"Upon the entry of judgment upon the verdict of the jury or the decision of the court or judge thereof, awarding damages as hereinbefore prescribed, the state of Washington may make payment of the damages assessed to the parties entitled to the same, and of the costs of the proceedings, by depositing the same with the clerk of said superior court to be paid out upon the direction of the court or the judge thereof  . . ." Rem. Code, § 897.

See, also, § 900, *supra*.

Aside from the body of the act, with all its pregnant meaning and wealth of fairness, we may look, with profit, to the title of the act of 1891, as did the court in the case of *State ex rel. Brainerd v. Grimes, supra,* when it resorted to the title of the act there considered. It is:

"An act to regulate the mode of proceeding to acquire and appropriate land, real estate and other property for public uses of the state of Washington, and prescribing the method of ascertaining and making compensation therefor, and declaring an emergency." Laws 1891, p. 138.

Clearly this act is intended as an aid to the sovereignty of the state, if not, indeed, one resting in the very necessities of the state. For, like its creatures, when the state engages in public service, it is without power to take property without first making compensation therefor. To make compensation, the amount thereof must be first ascertained. To hold that the legislature intended that the state should bring its action, have damages awarded, and then either call a special session of the legislature to make an appropriation, or await the action of the next legislature, would negative the implications, if not the express words of the act. The only fair and reasonable construction to be put upon the act is that the legislature intended that all judgments awarded in condemnation proceedings should be paid presently so that the state might not be hampered in the exercise of the functions which pertain to sovereignty.

To hold otherwise would put it in the power of the state to appropriate private property at will, and leave the shorn citizen to the chilling comfort of legislative indifference; for if there be no appropriation to satisfy the state's invasion of relators' property, no power on earth could compel the legislature to pass upon or allow a claim, however just it might be. In other words, if the law be not so, it is within the power of the officers of the state, by affirmative act, and in the power of the legislature, by nonaction, to annul the constitution.

In principle, there is no difference between the case of *State ex rel. Brainerd v. Grimes, supra,* and the case at bar. In the one, the legislature created an office, fixed a salary, and directed that the officer be paid for services rendered. There was no specific appropriation. In the case at bar, the legislature has authorized the taking of private property when necessary for the public use. Such necessity is not to be determined arbitrarily by the administrative officers, but is reserved by the constitution as a judicial question, and is to be adjudged only after a hearing. The constitution has said that property shall not be taken without compensation first paid for its use. The state has, arbitrarily and in defiance of this constitutional right, taken the property of relators. The legislature has provided the manner of payment, and from whence the compensation is to be paid. The state is under obligation to do that which it should have done before taking possession, that is, to tender a warrant upon the treasury.

In our discussion, it will be borne in mind that the state is not treated as a tort feasor, but as a contract creditor to be held to an observance of "the same rules of conduct as it insists upon in the citizen when dealing with his fellows. The same obligation to do justice rests upon it as rests upon an individual." *State ex rel. Maddaugh v. Ritter,* 74 Wash. 649, 134 Pac. 492.

It may be contended that if ch. V, Rem. Code, is in fact a continuing appropriation of money to meet such cases as this, that it is void because the amount is left uncertain.

"It was not necessary to the payment of appellees' claim that there should first be a specific appropriation by the legislature for its payment. The general assembly has spoken concerning such claims in plain language, as follows: 'And the auditor of state shall thereupon audit the same as a claim against the treasury, and the treasurer of state shall pay the same out of any money not otherwise appropriated." *Hart v. State ex rel. Hite* (Ind.), 64 N. E. 854, 58 L. R. A. 949.

See, also, *Humbert v. Dunn*, 84 Cal. 57, 24 Pac. 111; *People ex rel. Becker v. Miner*, 46 Ill. 390.

There are very substantial reasons for these holdings. We have adverted to the necessity for undelayed action when the state is engaged in the exercise of its functions, and to meet such contingencies, it may be readily inferred that the legislature had in mind the constitutional provisions that no property shall be taken unless the necessity for so taking had been determined by a court of competent jurisdiction; that, when the necessity is adjudged, the officers of the state should proceed without delay to submit the matter of an award to a jury, and then, if the award be fair, make immediate payment. In other words, the legislature made a general act to cover all cases arising where the state, in the interim between legislative sessions, found it necessary to take private property for a public use.

We have not overlooked Rem. Code, § 5872, which authorizes the highway commissioner to

"Acquire right of way . . . by gift, purchase or condemnation . . ." and provides that: "The cost of such right of way shall be paid for from the fund apportioned to the state road for which such right of way is acquired."

We have examined the several state highway acts and find no purpose of the legislature to repeal any of the provisions

of the eminent domain act, or to limit the right of a citizen whose property has been arbitrarily taken by the state for its uses. While § 5872 provides that the cost of a right of way shall be paid for from the fund apportioned to the state road for which such right of way is acquired, it does not, in terms, make that method exclusive. It is fundamental that a constitutional right will not be denied or abridged by implications arising out of some statute. This must be so, for the power to take is not granted by, nor does it depend upon, the law of which § 5872 is a part, nor upon the constitution. It rests in the sovereignty of the state. *Gasaway v. Seattle,* 52 Wash. 444, 100 Pac. 991, 21 L. R. A. (N. S.) 68.

Under the admitted facts of this case, having reference to the constitution as well as the law, § 5872 means that an owner of property taken for a public use shall be paid out of the highway fund, but it does not follow, if there be no such fund or if it has been exhausted, that he is to go without that compensation which the constitution guarantees to him and which may be paid under the eminent domain act. Albeit, if the state had not taken possession of relators' property, and put it to a public use, we might not compel the issuance of a warrant upon a showing that the auditor had misappropriated the highway fund.

Any other conclusion would, under the facts of this case, compel a holding that the act creating the office of highway commissioner is unconstitutional in so far as it undertakes to limit the mode or method of compensating a landowner whose property had been abitrarily taken and put to a public use.

It is the order of the court that the demurrer of respondent be overruled, and that the writ issue directing that a warrant be drawn for the amount of the award and costs, together with legal interest from the time the judgment was entered in the court below.

MORRIS, C. J., ELLIS, and MOUNT, JJ., concur.