[No. 26710. Department One. September 7, 1937.]

THE STATE OF WASHINGTON, *on the Relation of Senja Decker et al., Plaintiff,* v. CLIFF YELLE, *as State Auditor, Respondent.*[1]

[1]Reported in 71 P. (2d) 379.

*A. H. Ward* and *Condon V. Barclay,* for relators.

*The Attorney General* and *W. A. Toner, Assistant,* for respondent.

GERAGHTY, J.—This is an original application in this court for a writ of mandate requiring the state auditor to issue to the relators a warrant upon the state treasury for the balance due upon a judgment against the state and in favor of the relator Decker, entered by the superior court of Thurston county and affirmed by this court in *Decker v. State,* 188 Wash. 222, 62 P. (2d) 35, where the facts upon which the judgment is based are set out.

Subsequent to the rendition of the judgment, relator C. E. Bingham & Company acquired an interest in it by assignment from the relator Decker, who will, however, be hereafter referred to as if sole relator.

The affidavit in support of the application for the writ, after reciting the appropriation by the state of a right of way over land of the relator, for use of the Northern hospital, without first ascertaining and paying compensation therefor, and the subsequent rendition of the judgment awarding compensation and its affirmance in the supreme court, alleges that, after receipt of the remittitur by the superior court, the relator caused to be certified, by the clerk of the court, a transcript of the judgment, and, on January 5, 1937, lodged the same with the state auditor, with a demand

for a warrant in payment of the judgment; that the state auditor refused to issue a warrant until an appropriation should be made therefor by the legislature; that, at the ensuing session of the legislature, there was included in the supplemental appropriation bill (Chapter 231 of the 1937 session laws, p. 1202) the following item:

"SENJA DECKER, judgment for costs in re: Senja Decker vs. State of Washington, et al......$1,500.00."

That, when this appropriation became effective, the auditor issued to the relator a warrant upon the state treasury for fifteen hundred dollars, the sum appropriated, but refused to issue a warrant for the full amount of the judgment and costs, amounting to somewhat more than two thousand dollars.

It may be taken for granted that there was no purpose on the part of the legislature to repudiate, in whole or in part, payment of the judgment, and that the limited appropriation was the result of some error or oversight. That the sum appropriated was made in error, is evidenced by the designation of the whole as for costs in the action. This was one of numerous sums appropriated for payments of judgments and, in some instances, costs of suits. But whatever the explanation may be of the failure of the legislature to appropriate the full sum necessary to pay the judgment, the fact remains that the relator has yet to be paid the full compensation awarded her by judgment of the court, notwithstanding that we said in the course of our opinion in *Decker v. State, supra:*

"Having already taken respondent's property for 'public use,' the state cannot now escape paying just compensation."

■ The state auditor contends that he is without authority to issue the warrant, first, because the state constitution, Art. VIII, § 4, as amended, provides that

no moneys shall be paid out of the state treasury, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within one calendar month after the end of the next ensuing fiscal biennium; and second, because of the inhibitions contained in Rem. Rev. Stat., § 11002 [P. C. § 6587]:

"The state auditor shall in no case issue any state warrant unless there is a law authorizing the issue of the same, and every warrant shall state the act under which it is drawn; and if any state auditor shall issue any state warrant not authorized by law, he shall forfeit and pay fourfold the amount of such order to the state, to be recovered by action against the auditor and his sureties on his official bond."

On the other hand, the relator relies on Art. I, § 16, of the state constitution, embodied in the bill of rights, reading, in part:

"No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner . . . , which compensation shall be ascertained by a jury, unless a jury be waived, as in other civil cases in courts of record, in the manner prescribed by law. Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such, without regard to any legislative assertion that the use is public."

As between the two constitutional provisions, the respondent's contention would give controlling effect to Art. VIII, § 4. We think, however, that there is no inconsistency between the two sections. The object of Art. VIII, § 4, is to reserve to the legislative department the exclusive power of deciding how, when, and for what purpose public funds should be used by governmental agencies in carrying on the state's business.

*Humbert v. Dunn,* 84 Cal. 57, 24 Pac. 111; cited in *State ex rel. Peel v. Clausen,* 94 Wash. 166, 162 Pac. 1; while Art. I, § 16, is a solemn declaration that the state itself, as a body politic, shall never take or appropriate the property of a citizen for public use without making just compensation therefor.

It has been said that declarations of rights, or bills of rights, are the enumeration of certain great political truths essential to the existence of free government. But they are more than mere abstract declarations of general principles. In the language of Judge Brewer:

"Indeed, all of them may be considered, generally speaking, as conditions and limitations upon legislative action; and no law can be sustained which trenches upon the rights guaranteed by them, or which conflicts with any limitation expressed in them. It is true many of them are largely mere affirmations of political truths; and yet as to those, it may safely be asserted that the political truths affirmed cannot be ignored in any valid enactment." *Atchison Street R. Co. v. Missouri Pac. R. Co.,* 31 Kan. 660, 3 Pac. 284.

The state possesses, as an inherent and inalienable attribute of its sovereignty, the power of eminent domain, under which the private property of the individual citizen may be appropriated against his will for public use. The constitution protects the citizen against the abuse or misuse of this transcendent power by requiring, as a condition to its exercise, that just compensation be made. If the state, acting through its executive officers, may take and appropriate the citizen's property and remit him to succeeding legislatures for compensation, the constitutional provision amounts to no more than the declaration of a high moral principle, stripped of any legal sanctions for its enforcement. As was said in *State ex rel. Peel v. Clausen, supra:*

"To hold otherwise would put it in the power of the state to appropriate private property at will, and leave the shorn citizen to the chilling comfort of legislative indifference; for if there be no appropriation to satisfy the state's invasion of relators' property, no power on earth could compel the legislature to pass upon or allow a claim, however just it might be. In other words, if the law be not so, it is within the power of the officers of the state, by affirmative act, and in the power of the legislature, by non-action, to annul the constitution."

The facts in the *Peel* case were not different in principle from the facts in the present case. Condemnation proceedings were instituted by the state to acquire the right of way for a highway, the value of the property found by the verdict of a jury, and the judgment therefor entered. The state took possession of the property without paying the award into court. Application was made to this court for a writ to compel the state auditor to issue a warrant in payment of the award. It was urged by the state that there was no fund appropriated by the legislature available for payment of the award; that the special fund provided for the improvement had been exhausted and paid out by the state; that there was no contingent appropriation out of the general fund for the payment of judgments against the state; and that, in the absence of such appropriation, the state auditor could not issue a warrant against the general fund without violating the provisions of Art. VIII, § 4, of the constitution, as well as Rem. Rev. Stat., § 11002.

Touching the defense of no available funds, the court said:

"The burden is not upon the relators to plead the state of the public fund. The state, through its officers, has taken relators' property and put it to a public use in defiance of the constitutional limitations upon its power to take without first making just compensation.

. . . Having failed in its duty to the citizen, the law will presume that it is prepared to pay the value of the property taken, when called upon to do so. . . .

"Under the admitted facts of this case, having reference to the constitution as well as the law, § 5872 means that an owner of property taken for a public use shall be paid out of the highway fund, but it does not follow, if there be no such fund or if it has been exhausted, that he is to go without that compensation which the constitution guarantees to him and which may be paid under the eminent domain act. Albeit, if the state had not taken possession of relators' property, and put it to a public use, we might not compel the issuance of a warrant upon a showing that the auditor had misappropriated the highway fund."

That case would seem to foreclose every question raised here. But the respondent urges that some language employed in *State ex rel. Davis v. Clausen,* 160 Wash. 618, 295 Pac. 751, qualifies our holding in *State ex rel. Peel v. Clausen.*

While some language was used in the later case distinguishing the earlier one, the principle announced was not abandoned. Both cases were correctly decided in principle. The funds involved in *State ex rel. Davis v. Clausen* were revenues collected by the state educational institutions in their administrative activities and covered into a special fund deposited with the state treasurer. We held that these funds constituted moneys to be paid out of the treasury of the state, within Art. VIII, § 4, as amended, prohibiting all such payments, except in pursuance of any appropriation by law. And we held, further, that there could be no continuing appropriation, and that appropriations from this fund, as from other funds in the state treasury, were effective only for the biennium. This holding is entirely consistent with what we have said as to the effect of the two constitutional provisions involved.

404

It is suggested that the state treasurer is a necessary party to this action. We do not think so. The relief sought is the issue of a warrant, by the state auditor, upon the state treasury for the sum due the relators. It is not to be assumed, in this action, that the state treasurer will decline to pay a warrant so drawn upon the order of this court.

. The writ will issue directing the respondent to draw and deliver to the relators a warrant payable out of any funds in the state treasury not otherwise appropriated.

STEINERT, C. J., MAIN, BLAKE, and MILLARD, JJ., concur.

